FIFTH DIVISION

No. 1-07-1455

| | | |
|---|---|---|
| MICHAEL EVANS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County |
| | ) | |
| v. | ) | No. 04 L 7795 |
| | ) | |
| DOHERTY CONSTRUCTION, INC., | ) | Honorable |
| ROUGHNECK CONCRETE DRILLING AND | ) | Donald J. O'Brien, |
| SAWING COMPANY, McDONOUGH | ) | Judge Presiding. |
| MECHANICAL SERVICES, INC., WOLF | ) | |
| MECHANICAL, and EVERGREEN SCHOOL, | ) | |
| | ) | |
| Defendants-Appellees | ) | |
| _____ | ) | |
| | ) | |
| (Doherty Construction, Inc., Roughneck Concrete | ) | |
| Drilling and Sawing Company, McDonough | ) | |
| Mechanical Services, Inc., and Wolf Mechanical, | ) | |
| | ) | |
| Third-Party Plaintiffs-Appellees; | ) | |
| | ) | |
| Atash Fire and Safety Equipment Company, | ) | |
| | ) | |
| Third-Party Defendant-Appellant). | ) | |

PRESIDING JUSTICE FITZGERALD SMITH delivered the opinion of the court:

The appeal in this workers' compensation case concerns the circuit court's orders directing

third-party defendant Atash Fire & Safety Equipment Co. (Atash) to pay statutory attorney fees

and expenses to plaintiff Michael Evans after Atash had sold its workers' compensation lien to

defendants Doherty Construction, Inc. (Doherty), Roughneck Concrete Drilling and Sawing Co.

(Roughneck), McDonough Mechanical Services, Inc. (McDonough), and Wolf Mechanical

(Wolf). On appeal, Atash contends the court improperly ordered the payment because it sold the lien prior to the settlement with plaintiff and because the proceeds from the sale did not constitute "reimbursement" under the pertinent statutory provision. Defendants Roughneck, McDonough, and Wolf have filed a joint response; Doherty has responded separately and has adopted the joint response of the other defendants. We affirm the orders to compel the employer's payment of statutory attorney fees and expenses.

In July 2003, Evans, an Atash employee, was injured in a construction accident. He subsequently sued defendants Doherty, Roughneck, McDonough, Wolf, and Evergreen Park Elementary School District 124[1] for personal injuries arising from the accident. Plaintiff's employer, Atash, paid workers' compensation benefits in the amount of $152,000 to plaintiff and it asserted a lien pursuant to section 5(b) of the Workers' Compensation Act (Act) (820 ILCS 305/5(b) (West 2006)) against any proceeds collected by plaintiff. Defendants brought various cross-claims and counterclaims for contribution against each other, and each filed third-party contribution actions against Atash.

In May 2007, prior to trial, defendants Doherty, Roughneck, McDonough, and Wolf reached an agreement with Atash to purchase its workers' compensation lien for $90,000, and to dismiss the third-party claims against Atash. Defendants also filed a motion concerning admission of liability. At a hearing on May 2, the parties informed the court that, as to the third-party action, there would be a settlement and that, according to one of the parties, the lien was

---

[1] Defendant Evergreen Park Elementary School District 124 was eventually dismissed from the action on a motion for summary judgment and is not a party to this appeal.

1-07-1455

"going away as well by settlement." The court stated that it understood the lien had been sold for $90,000. It further stated that "the third-party defendant employer [*i.e.*, Atash] *** will be dismissed with prejudice pursuant to settlement" and the action would be "going ahead with primary defendants, the lienholder having been bought out and third party, *** gone."

The following day, the court continued hearing matters related to the settlement. The court was informed that there was a settlement with plaintiff for $650,000, from which the $90,000 paid for the lien would be subtracted. There was a lengthy discussion with counsel for Atash about the sequence of the settlement: counsel asserted that when Atash sold the rights to the lien, the lien "was still open" and "had not been extinguished" or "applied to any judgment or settlement." The court understood that Atash no longer had the lien and thus could not enforce it, but stated that, under section 5(b) of the relevant statute, the provision concerning attorney fees and reimbursement could only apply to Atash:

> "And I quote from it – that 5(b) of the Workmen's Comp Act – 'Out
>
> of any reimbursement received by the employer' -- employer– and
>
> there's only one person who fits that in this whole scenario. That's
>
> Atash or whatever their name is.
>
> Then we go on and they talk about 'that resulted in or
>
> substantially contributed to the procurement by settlement or
>
> otherwise of the proceeds of which the employer is reimbursed,
>
> then the employer shall pay such attorney 25 percent of the gross
>
> amount.'

The only one who is obligated by statute to pay attorney

fees *** is the employer who gets reimbursed. There is nothing in

the statute that says it is only restricted if the plaintiff reimburses

you. The wording is 'if you are reimbursed.' And it could be from

any source."

The court further discussed with counsel for Atash the timing of the defendants' purchase of the lien, but concluded that, nonetheless, when it came to attorney fees, for the purpose of section 5(b), Atash was required to pay a statutory percent: "The real heart of this whole thing is, do you have to pay attorneys fees? I'm not too concerned about expenses. That's the least of my worries. You've made a recovery under 5(b)."

At that hearing, there was an ongoing disagreement as to the nature of what Atash sold, as evidenced by the following exchange:

"THE COURT: I agree with you. You sold it [*sic*] him.

You got reimbursed for the lien.

[COUNSEL FOR ATASH]: No, we didn't. We got paid

for the transfer of the rights.

THE COURT: What right did you transfer? A lien right.

So they paid you for a lien right."

Atash's counsel continued to voice its position that the payment it received did not constitute "reimbursement pursuant to [section] 5(b)" of the Act; the court, questioning whether Atash had legal authority for its position, deferred ruling until the next day and gave Atash time to reply

with citation of authority.

The following day, May 3, the court issued a written order granting defendants' motion on admission of liability, allowing defendants to file amended answers admitting liability. In the order, the court also dismissed with prejudice all affirmative defenses and all cross-claims and counterclaims for contribution, as well the third-party complaints for contribution against Atash, which were dismissed "pursuant to settlement as agreed in open Court." The order stated the matter was to proceed to trial on the issue of damages.

The same day, the court entered another order stating that the parties had reached a settlement agreement and dismissing the matter with prejudice "and with costs pursuant to settlement." In that order, the court expressly retained jurisdiction of the settlement and "as to any and all liens."

Also that day, plaintiff filed a motion pursuant to section 5(b) of the Act, seeking to compel Atash to pay attorney fees and expenses. See 820 ILCS 305/5(b) (West 2006).

In yet another order issued on May 3, the court allowed Atash to respond to plaintiff's motion to compel it to pay statutory 25% attorney fees and a *pro rata* share of expenses and gave it leave to file its own motion to compel the "assignees of lien" to pay the same. Defendants were allowed to file a joint response to Atash's motion.

At a hearing the next day, May 4, the court ruled on the motions. In its ruling, the court acknowledged Atash's position that it received $90,000, not in satisfaction of a lien, but as an assignment of its rights. However, it found that to be "a distinction without a difference." The court found it irrelevant that the case had not been settled at the time of the lien assignment,

noting that the pertinent statutory section contained no specific language limiting reimbursement after settlement of the case. Rather, the court emphasized, the language used was "quote, [']Out of any reimbursement received by the employer,['] closed quote." Based on that, the court found that the employer's duty to pay 25% attorney fees and a *pro rata* share of the expenses arose out of the reimbursement itself rather that the timing of the reimbursement.

Also on May 4, the court entered a written order granting plaintiff's motion to compel Atash to pay the statutory share of attorney fees and expenses. In its order, the court required Atash to pay statutory 25% attorney fees amounting to $22,500 and its *pro rata* share of the expenses that were calculated to be $67,500 according to the rule enunciated in Overlin v. Windmere Cove Partners, Inc., 325 Ill. App. 3d 75, 756 N.E.2d 926 (2001). The order incorporated the court's findings and rulings that were contained within the transcript of the proceedings.[2]

Subsequently, Atash filed a motion to append the agreement for the purchase of the workers' compensation lien to its response to plaintiff's motion to compel and to the court's May 4 order, which was allowed. Atash also filed a motion to compel defendants to pay plaintiff's statutory attorney fees and *pro rata* share of expenses, which was denied.

On May 17, 2007, the court entered a written order in which it granted leave to append the purchase agreement to Atash's response to plaintiff's motion to compel and to the court's

---

[2] We note the discrepancy between the written order calculating expenses in the amount of $67,500 and the transcript, in which the court twice stated the costs "assessed on a pro rata basis on the figure of $68,500."

order entered on May 4, 2007, *nunc pro tunc*, and also made final and appealable, pursuant to Supreme Court Rule 304(a) (210 Ill. 2d R. 304(a)), its May 4 written order requiring Atash to pay plaintiff 25% attorney fees in the amount of $22,500 and its *pro rata* share of expenses in the amount of $67,500.

Atash timely filed a notice of appeal from the court's orders of May 4 and 17, 2007.

On appeal, Atash first contends that the court improperly ordered it to pay the statutory 25% attorney fees and expenses because it had already sold its lien rights to defendants. It asserts, for the same reason, that the court also improperly denied its motion to compel defendants to pay the same. Defendants counter that the plain language of section 5(b) of the Act mandates that Atash pay statutory attorney fees and costs, and we agree.

Although Atash fails to provide the proper standard of review for its appeal, the issue raised here concerns the construction of section 5(b) of the Act. Because an issue of statutory interpretation presents a question of law, review is *de novo*. Overlin, 325 Ill. App. 3d at 77.

We examine the language of section 5(b) of the Act with the basic principles of statutory construction in mind: the primary goal of such examination is to ascertain and effectuate the legislature's intention. Overlin, 325 Ill. App. 3d at 77. Generally, the best indicator of legislative intent is the language of the statute itself, with the words used given their plain and ordinary meaning. In re Estate of Callahan, 144 Ill. 2d 32, 43, 578 N.E.2d 985 (1991). In ascertaining the legislature's intent, courts look to the objectives the statute is supposed to accomplish. Harris v. Manor Healthcare Corp., 111 Ill. 2d 350, 362, 489 N.E.2d 1374 (1986).

Section 5(b) provides, in pertinent part:

"Out of any reimbursement received by the employer pursuant to this Section the employer shall pay his pro rata share of all costs and reasonably necessary expenses in connection with such third-party claim, action or suit and where the services of an attorney at law of the employee or dependents have resulted in or substantially contributed to the procurement by suit, settlement or otherwise of the proceeds out of which the employer is reimbursed, then, in the absence of other agreement, the employer shall pay such attorney 25% of the gross amount of such reimbursement."

820 ILCS 305/5(b) (West 2006).

We agree with defendants that, according to the plain and ordinary meaning of the words used in section 5(b), the employer is required to contribute to the costs of the employee's recovery against a third party where the employer has received reimbursement for the workers' compensation payments made to the employee. Our supreme court has stated as much on numerous occasions. Most recently, it held that the legislature "enacted the costs and fee provisions of section 5(b) to ensure that 'an employer *** contribute[s] to the necessary costs of the employee's recovery against a negligent third party where the employer is to receive reimbursement from the recovery for [workers'] compensation payments made or to be made to the employee.' " LaFever v. Kemlite Co., 185 Ill. 2d 380, 399, 706 N.E.2d 441 (1998), quoting Reno v. Maryland Casualty Co., 27 Ill. 2d 245, 247, 188 N.E.2d 657 (1962). This interpretation is consonant with the court's previous determinations concerning the same provision.

In finding that the provision at issue requires an employer to pay 25% of attorney fees from reimbursement received, the court relied upon its earlier statement, which it quoted again in LaFever, concerning the "plain purpose" of section 5(b). Ramsey v. Morrison, 175 Ill. 2d 218, 237, 676 N.E.2d 1304 (1997), quoting Estate of Callahan, 144 Ill. 2d at 46, quoting Reno, 27 Ill. 2d at 247. In Ramsey, the court reaffirmed its earlier pronouncement about the purpose of section 5(b), that is, to require the employer "to contribute to the necessary costs of the employee's recovery *** where the employer is to receive reimbursement *** for [workers'] compensation payments made *** to the employee." Ramsey, 175 Ill. 2d at 237-38, quoting Estate of Callahan, 144 Ill. 2d at 46, quoting Reno, 27 Ill. 2d at 247. Further, after stating that section 5(b) "requires an employer to pay, out of any reimbursement received from the employee, its *pro rata* share of the employee's costs and expenses and, unless otherwise agreed, 25% of the gross amount of the reimbursement as fees to the employee's attorney" (Ramsey, 175 Ill. 2d at 237), the Ramsey court found it irrelevant to determining the employer's worker's compensation liability and contribution liability the fact that it may also have to pay section 5(b) attorney fees and costs (Ramsey, 175 Ill. 2d at 239). Rather, the court there held that the "attorney fees and costs provision of section 5(b) is an obligation imposed *on the employer,*" and it found "no basis in section 5(b) for shifting this obligation to the third party." (Emphasis added.) Ramsey, 175 Ill. 2d at 239; see also Corley v. James McHugh Construction Co., 266 Ill. App. 3d 618, 622-23, 639 N.E.2d 1374 (1994) (holding that section 5(b) creates a duty specifically upon the employer to pay attorney fees and costs).

We find no reason to depart from this interpretation and, furthermore, Atash offers no

pertinent authority upon which we could view the employer's duty pursuant to section 5(b) in a manner contrary to that set out by our supreme court. Rather, we agree with defendants that Atash's authorities are readily distinguishable in that they present factually dissimilar circumstances and, thus, are inapplicable here. The three cases upon which Atash primarily relies, Gonzalez v. Evanston Fuel & Material Co., 265 Ill. App. 3d 520, 637 N.E.2d 691 (1994) (addressing assignability of workers' compensation lien, holding that Act does not prohibit assignment of lien and that Contribution Act was inapplicable where two tortfeasors had settled their contribution action without either having settled with the plaintiff); Foster v. Devilbiss Co., 174 Ill. App. 3d 359, 529 N.E.2d 581 (1988) (addressing deductions from workers' compensation lien for unproven medical expenses after jury reached verdict in favor of the plaintiff); and Overlin, 325 Ill. App. 3d 75 (addressing deduction of *pro rata* share of costs after 25% attorney fees taken off top of employer's reimbursement), do not change the conclusion that the timing of the settlement between parties here does not affect Atash's statutory obligation to pay attorney fees and expenses to plaintiff. As defendants additionally point out, Atash has no authority to support the proposition that the employer may avoid its statutory obligation by selling, rather than waiving, its workers' compensation lien.[3]

---

[3] Atash appears to back away from its own citation of authorities. In its reply brief, Atash distinguishes some of the cases that it had relied upon in its opening brief, asserting, for example, that Dukes v. J.I. Case Co., 186 Ill. App. 3d 439, 542 N.E.2d 439 (1989), which it had previously cited for the meaning of "reimbursement," was "not dispositive" here (and similarly distinguishing Silva v. Electrical Systems, Inc., 183 Ill. 2d 356, 701 N.E.2d 506 (1998), which it

Although Atash stakes its position primarily on the assertion that the amount it received for the sale of the lien rights was not "reimbursement" under the Act, the circuit court did not buy that argument and neither do we. The court correctly found Atash's insistence upon characterizing its settlement agreement concerning its lien rights as an "assignment"--as opposed to a sale--to be "a distinction without a difference" because Atash still received $90,000 in payment from defendants, meaning it had received a recovery under section 5(b). In its plain and ordinary meaning, "reimbursement" means repayment or compensation for monies spent. See, *e.g.*, The American Heritage Dictionary 1042 (2d ed. 1982) ("reimbursement" is the noun deriving from the verb "reimburse," meaning "to repay" or "to pay back or compensate (a person) for money spent").

As the court noted, section 5(b) contains no specific language limiting reimbursement to monies received after settlement of the case. Rather, the statute specifically uses the word "any" in modifying reimbursement that triggers the employer's duty to pay attorney fees and a *pro rata* share of the expenses. See 820 ILCS 305/5(b) (West 2006). We will not construe section 5(b) in a manner that would render any part of it meaningless. See Harris, 111 Ill. 2d at 362-63. The inclusion of the word "any" in section 5(b) therefore must mean its provisions cover repayment received by the employer from any source: in the instant case, the payment for the purchase of the lien rights was, then, reimbursement to Atash. Here, the court properly found it irrelevant that the case had not been settled at the time of the lien purchase--or "assignment"--by defendants because the employer's duty arose out of the reimbursement itself rather that the timing of the

also had earlier cited).

1-07-1455

reimbursement.

Because the statute does not place a limitation, based upon the timing of the employer's receipt of reimbursement, on the requirement that the employer pay 25% attorney fees and a *pro rata* share of costs, we reject Atash's position that it could not be compelled to pay the statutory fees and costs because it was already dismissed from the action before defendant's motion to compel was filed. Its argument on this point boils down to the assertion that, because the lien purchase agreement was (orally) memorialized by the court in proceedings on May 2, it was already dismissed from the action by the time plaintiff filed its motion to compel payment the following day. For one thing, Atash ignores the fact that the court, in entering its dismissal order of May 3, specifically retained jurisdiction of the matter for enforcement of the settlement and as to "any and all" liens. Contrary to Atash's assertion that it was dismissed from the litigation on May 2, the court added language of finality and appealability only to its order issued on May 4, in which it ordered Atash to pay the statutory fees and costs. See, *e.g.*, Brewer v. National R.R. Passenger Corp., 165 Ill. 2d 100, 105, 649 N.E.2d 1331 (1995) (trial court retains jurisdiction over cause for 30 days after entry of final order or judgment and has power to enforce settlement while action is pending before it). Therefore, by the time it could be said Atash was dismissed from the case, it had already been ordered to pay. Moreover, Atash itself continued an active role in the instant litigation by filing motions to append the purchase agreement and to compel defendants to pay statutory fees and costs and, thus, it was still participating in the litigation after the settlement agreement had been reached. Accordingly, Atash's position that it could not be compelled to pay because it was already dismissed from the litigation is without merit.

-12-

We find similarly unpersuasive Atash's remaining arguments, both its assertion that defendants could have claimed credit from plaintiff for the full amount of the workers' compensation lien (which was $152,000, minus attorney fees and costs, in the settlement negotiations with plaintiff), but instead chose to settle for the lesser amount of a $90,000 credit, as well as its claim that, under section 5(b) of the Act, the attorney fees and expenses would come from the defendants' credit, or lien offset, from any settlement with plaintiff, rather than from itself as the employer. Further, based upon our disposition, we need not address defendant Doherty's alternative argument that Atash lacked standing to ask the court to compel defendants to pay the statutory attorney fees and costs to plaintiff. As previously stated, the language of section 5(b) is clear in its mandate that the employer pay 25% attorney fees and a *pro rata* share of costs from the reimbursement it receives from *any* source. Accordingly, we decline Atash's invitation to read into the statute additional elements concerning the timing of a sale or assignment of lien rights or of the reimbursement payment itself.

Therefore, the orders of May 4 and 17, 2007, compelling Atash to pay its statutory fees and costs are affirmed.

Affirmed.

TULLY and QUINN, JJ., concur.

**REPORTER OF DECISIONS - ILLINOIS APPELLATE COURT**

---

**MICHAEL EVANS,**

**Plaintiff-Appellee,**

**v.**

**DOHERTY CONSTRUCTION, INC., ROUGHNECK CONCRETE DRILLING AND SAWING COMPANY, McDONOUGH MECHANICAL SERVICES, INC., WOLF MECHANICAL, and EVERGREEN SCHOOL,**

**Defendants-Appellees,**

---

**(Doherty Construction, Inc., Roughneck Concrete Drilling and Sawing Company, McDonough Mechanical Services, Inc., and Wolf Mechanical,**

**Third-Party Plaintiffs-Appellees;**

**Atash Fire and Safety Equipment Co.,**

**Third-Party Defendant-Appellant).**

---

**No. 1-07-1455**

**Appellate Court of Illinois
First District, Fifth Division**

**April 25, 2008**

---

**PRESIDING JUSTICE FITZGERALD SMITH delivered the
opinion of the court:
Tully and Quinn, JJ., concur.**

---

**Appeal from the Circuit Court of Cook County**

**04 L 7795**
**The Hon. Donald J. O'Brien, Judge Presiding.**

**FOR THIRD-PARTY DEFENDANT-APPELLANT:**

**Paul Tsukuno**
**Cynthia Freund**
**Inman & Fitzgibbons, Ltd.**
**33 N. Dearborn St., Suite 1825**
**Chicago, IL 60602**

**FOR DEFENDANTS-APPELLEES ROUGHNECK CONCRETE DRILLING AND SAWING CO., McDONOUGH MECHANICAL SERVICES, INC., and WOLF MECHANICAL:**

**David L. LaPorte**
**Larry S. Kowalczyk**
**Querry & Harrow, Ltd.**
**175 W. Jackson Blvd., Suite 1600**
**Chicago, IL 60604**

**FOR DEFENDANT-APPELLEE DOHERTY CONSTRUCTION, INC.:**

**Philip W. Domagalski**
**William E. Spizzirri**
**Kralovec & Marquard, Chartered**
**55 W. Monroe St., Suite 1000**
**Chicago, IL 60603**