FIRST DIVISION

No. 1-10-0114

IN THE APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| LORYANN JOHNSON, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | |
| | ) | |
| AYALNESH A. TIKUYE AND AMIGO | ) | No. 06 L 5892 |
| DRIVING SCHOOL, | ) | |
| | ) | |
| Defendants | ) | |
| | ) | |
| (The People *ex rel*. The Department of | ) | |
| Central Management Services, | ) | The Honorable |
| | ) | William Maddux, |
| Intervening Plaintiff-Appellant). | ) | Judge Presiding. |
| | ) | |

JUSTICE LAMPKIN delivered the judgment of the court, with opinion.
Presiding Justice Hall and Justice Hoffman concurred in the judgment and opinion.

**O P I N I O N**

This case involves a worker's compensation lien.  The State of Illinois *ex rel*. the Department of Central Management Services (CMS) intervened in a negligence action brought by plaintiff, Loryann Johnson, against third-party tortfeasors, Ayalnesh Tikuye and Amigo Driving School, following a car accident.  After

Johnson was awarded proceeds in an arbitration, CMS filed a motion to enforce its worker's compensation lien against that award pursuant to section 5(b) of the Workers' Compensation Act (Act) (820 ILCS 305/5(b) (West 2004)).  The circuit court awarded CMS limited lien recovery.

On appeal, CMS contends the circuit court erred in conducting an evidentiary hearing to determine whether Johnson's injuries were work-related or attributable to another source where no such hearing was necessary because the arbitrator determined in an evidentiary hearing that the work-related car accident proximately caused Johnson's injuries and set the arbitration award accordingly.  In the alternative, CMS contends the circuit court erred in relying on the testimony of Johnson's sole witness.  Based on the following, we reverse and remand.

FACTS

On June 8, 2004, Johnson, a license examiner for the Secretary of State, was injured when Tikuye backed up over a curb and hit a light pole.  Johnson sought treatment for neck and back injuries.  Johnson was diagnosed with an L5/S1 disc herniation.  Johnson continued treatment and did not return to work until March 2007.  Johnson filed a worker's compensation claim and was awarded a total of $123,147.53, which included $75,038.64 for medical payments, $34,338.95 for lost wage payments, and

2

1-10-0114

$13,769.94 for settlement of the claim.

Johnson brought a negligence action against defendants, Tikuye and Amigo Driving School.[1]  On June 15, 2009, a binding arbitration was held in which Johnson sought $250,000 based on $77,833.66 in medical bills and $84,000 in lost wages because the "motor vehicle accident caused the L5-S1 [bulge], or at least aggravated her degenerat[ive] facet disease."  Defendants countered that Johnson was entitled to recover only $40,000.  CMS filed a petition to intervene to protect its worker's compensation lien rights in the amount of $123,147.53.

The arbitrator conducted a hearing to determine the proximate cause of Johnson's injuries.  The hearing consisted of the testimony of Johnson and defendants as well as "extensive material and medical evidence."  In a written opinion, the arbitrator concluded that the majority of Johnson's medical bills, namely, $42,375 for "304 visits for doctor care," were "excessive" in light of the diagnosis.  Without elaborating, the arbitrator further found Johnson's lost wages, namely, $28,000 per year, were subject to reduction.  The arbitrator noted that plaintiff had a prior back injury requiring care in October 2001 and that defendants argued the "facet injections" Johnson

_____

[1]The car involved in the accident was owned by Amigo Driving School.

3

received were for a "degenerative condition."  The arbitrator ultimately awarded plaintiff a gross amount of $118,700, but reduced the award by 20% because of Johnson's comparative fault for failing to use her second brake to avoid the accident, ultimately awarding her $94,960.  The arbitrator did not provide a breakdown of the award.

CMS filed a motion to enforce its subrogation lien recognizing that, because Johnson was awarded less than paid in worker's compensation proceeds, CMS was entitled only to $71,220, which was Johnson's arbitration award less 25% for statutorily prescribed attorney fees in bringing the negligence claim. Johnson filed a response arguing that the trial court should scrutinize the arbitration award to determine what portion was related to her injuries resulting from the accident because CMS's lien could attach only to those proceeds.

On November 17, 2009, the trial court entertained arguments regarding whether it should enforce the entirety of the lien or adjudicate the eligible proceeds for the lien.  CMS stated, on more than one occasion, that it was willing to engage in an evidentiary hearing even though it was unnecessary.  Relying on *Fret v. Tepper*, 248 Ill. App. 3d 320, 618 N.E.2d 526 (1993), and the fact that there was no transcript from the arbitration, the trial court ruled that it would hold an evidentiary hearing.

On December 1, 2009, the trial court conducted the evidentiary hearing. CMS's expert, Kevin Kulczyski, a chiropractor at the Taylor-Ogden Medical Center, testified that he treated Johnson following her June 2004 accident. During that treatment period, Dr. Kulczyski referred Johnson to Dr. Gale Rosseau for an electromyography and a nerve conduction velocity test and to Dr. Fink, an orthopedic spine surgeon. Dr. Kulczyski testified that the referrals were necessary and reasonable due to Johnson's L5/S1 injury, which he described as "the worst condition for the disc." Dr. Kulczyski saw Johnson for approximately 300 outpatient visits. According to Dr. Kulczyski, the 300 visits were necessary to provide Johnson with relief while awaiting future treatment plans from the specialists. When asked whether Johnson's injury resulted from a work-related accident, Dr. Kulczyski said "[w]hen she came into my office [Johnson] said she got hurt at work in a motor vehicle accident. That's all I know." Dr. Kulczyski submitted all of his bills to Johnson's employer for worker's compensation. Dr. Kulczyski testified that it was reasonable and necessary for Johnson not to return to work for three years pursuant to the injury and her job requirements.

On cross-examination, Dr. Kulczyski testified that he based his opinion of the cause of Johnson's injury on what she told

him.  Dr. Kulczyski stated that he could not know what portion of the condition for which he gave treatment was attributable to the accident or to a preexisting back condition.  Dr. Kulczyski testified that, after reviewing the medical records of the specialists, there was an indication that Johnson had a degenerative back condition.  Dr. Kulczyski, however, opined that Johnson had a disc extrusion that was the "worse [*sic*] I have ever seen of anything in my practicing career."

Johnson's expert, Dr. Mark Sloan, a board-certified anesthesiologist and pain physician, testified that he reviewed Johnson's medical file in connection with the underlying case.[2] Dr. Sloan opined that Johnson sustained a soft tissue injury, which is a cervical or lumbar sprain, as a result of the June 2004 accident.  According to Dr. Sloan, such an injury required five to six weeks of physical therapy.  Physical therapy at the Taylor-Ogden Medical Center for the recommended five- to six-week period would cost $4,625.  Dr. Sloan opined that Johnson's additional treatments were not related to the accident.  Dr. Sloan based his opinion on "preexistence and the fact of the nature of the type of findings on MRI and subsequent diagnostic tests that do not correlate with a soft tissue injury."  Based on

---

[2]Dr. Sloan provided a medical report to defendants in the arbitration proceeding.

his review of Johnson's medical records, Dr. Sloan opined that she had a degenerative disc disease of the lumbar and cervical spine prior to the June 2004 accident.

On cross-examination, Dr. Sloan testified that he did not treat Johnson for any injuries. Dr. Sloan said he was not an orthopedic physician.

The trial court issued a written opinion finding CMS's lien recovery was $42,286.88. The trial court calculated its award based on the arbitrator having awarded Johnson 47.5% of her requested negligence damages, *i.e.*, she was awarded $118,700 when she requested $250,000. "Applying the same reduction," the trial court found that it was "fair and reasonable" to reduce CMS's requested lien[3] by 47.5%, thereby awarding $42,286.88.

DECISION

I. Adjudication of Liability

The question before us is whether the trial court erred in conducting a further evidentiary hearing in order to adjudicate CMS's lien. CMS contends that the statute does not provide for such a hearing where the arbitrator already conducted an evidentiary hearing and awarded proceeds based on its findings of eligible work-related costs.

---

[3]We note that the trial court's order incorrectly represents that CMS's requested recovery was $89,025.

1-10-0114

Resolution of this issue involves statutory interpretation, which is a question of law we review *de novo*. *In re Estate of Dierkes*, 191 Ill. 2d 326, 330, 730 N.E.2d 1101 (2000).

It is well established that the primary goal of statutory interpretation is to ascertain and give effect to the legislature's intent by reading the plain language of the statute as a whole and giving the language its practical and liberal interpretation. *Id*. at 331.

Pursuant to section 5(b) of the Act, an employer has a right to reimbursement for compensation paid to an employee when the employee sustained an injury as a result of a third party and recovers from that party. *Porro v. M.W. Powell Co.*, 224 Ill. App. 3d 175, 177, 586 N.E.2d 458 (1991). In relevant part, section 5(b) provides:

"Where the injury or death for which compensation is payable under this Act was caused under circumstances creating a legal liability for damages on the part of some person other than his employer to pay damages, then legal proceedings may be taken against such other person to recover damages notwithstanding such employer's payment of or liability to pay compensation under this Act. In such case, however, if the action against such other person is brought by the injured

8

employee or his personal representative and judgment is obtained and paid, or settlement is made with such other person, either with or without suit, then from the amount received by such employee or personal representative there shall be paid to the employer the amount of compensation paid or to be paid by him to such employee or personal representative ***. ***

Out of any reimbursement received by the employer pursuant to this Section the employer shall pay his pro rata share of all costs and reasonably necessary expenses in connection with such third-party claim, action or suit and where the services of an attorney at law of the employee or dependents have resulted in or substantially contributed to the procurement by suit, settlement or otherwise of the proceeds out of which the employer is reimbursed, then, in the absence of other agreement, the employer shall pay such attorney 25% of the gross amount of such reimbursement.

If the injured employee or his personal representative agrees to receive compensation from the employer or accept from the employer any payment on account of such compensation, or to institute proceedings to recover the same, the employer may have

or claim a lien upon any award, judgment or fund out of
which such employee might be compensated from such
third party."  820 ILCS 305/5(b) (West 2004).

In other words, the statute "grants the employer a lien on
the recovery equal to the amount of workers' compensation
benefits paid or owed."  *In re Estate of Dierkes*, 191 Ill. 2d at
328.  The practical and liberal operation of the Act provides
prompt and equitable compensation to employees that have suffered
an injury while working regardless of fault, yet allows both the
employee and employer to recover from the true offender while
preventing the employee from obtaining double recovery.  *Id*. at
331-32.

The supreme court has succinctly stated:

"There is nothing in the statute that suggests a
limitation on the employee's obligation of
reimbursement from the third-party recovery.  If an
employer has made workers' compensation payments, the
obligation of reimbursement exists regardless of the
amount that the employee recovers.  [Citation.]  Thus,
if the amount of compensation paid by the employer
exceeds the employee's third-party recovery, then the
employer is entitled to the entire recovery, less fees
and costs.  [Citation.]  Clearly, '[i]t is of utmost

importance that the trial court protect an employer's [workers' compensation] lien.' [Citation.]" *Id*. at 332-33.

Simply stated, CMS's lien should have been enforced without reduction, other than for reasonable fees and costs, where Johnson recovered from defendants Tikuye and Amigo Driving School. CMS compensated Johnson for more than the third-party recovery and CMS adjusted its lien accordingly. In order to protect CMS and prevent Johnson from receiving double recovery, the trial court should have provided CMS with $94,960, the amount Johnson recovered from defendants, less the 25% statutory reduction for Johnson's attorney fees and reasonably necessary costs and expenses.

The statute does not provide for the arbitrary lien reduction imposed by the trial court here. "[T]he legislature removed impediments to the employer's full reimbursement, and specified setoffs thereto only for costs, expenses, and attorney fees. Had the legislature intended the employer's reimbursement to be subject to additional setoffs, the legislature would have supplied them." *Id*. at 334. The trial court's decision to conduct an evidentiary hearing to determine whether there was a portion of the arbitration award not related to the injury was not provided for by statute. See *Smith v. Louis Joliet*

*Shoppingtown L.P.*, 377 Ill. App. 3d 5, 877 N.E.2d 789 (2007) (the trial court lacked the authority to adjudicate the employer's lien in an amount less than the employee's recovery from a negligence suit). Moreover, the trial court's decision to reduce the lien recovery by a percentage equal to the amount the arbitrator reduced Johnson's requested relief was baseless. The arbitrator determined that Johnson's original recovery request from defendants was excessive in light of the testimony, reports from treating physicians, and expert evidence, and reduced the award accordingly. There was no basis upon which the trial court should have further reduced the arbitration award when that award accounted for the excessive nature of Johnson's requested recovery and the evidence of Johnson's degenerative condition.

We recognize that there are instances where it is necessary for a trial court to conduct an evidentiary hearing; however, those instances occur where settlement proceeds are not allocated among competing claims. See *Glenn v. Johnson*, 198 Ill. 2d 575, 764 N.E.2d 47 (2002) (where a settlement did not allocate among various claims, including loss of consortium, and the trial court reduced the worker's compensation lien without any factual basis, the case was remanded for an evidentiary hearing to determine the proper allocation of the settlement proceeds); *Fret*, 248 Ill. App. 3d 320; *Bart v. Union Oil Co.*, 236 Ill. App. 3d 964, 603

12

N.E.2d 77 (1992) (where a settlement did not allocate among various claims, including loss of consortium, the case was remanded because the trial court erred in providing lien recovery for the entire settlement amount); *Porro*, 224 Ill. App. 3d 175 (worker's compensation liens cannot attach to proceeds from loss of consortium claims).

We find *Fret*, the case primarily relied upon by Johnson, distinguishable from the case at bar. In *Fret*, the employee was involved in a car accident that resulted in injuries for which he received worker's compensation. Nearly three months later, the employee either injured or reinjured his back while on the job and again received worker's compensation. The employee entered into a settlement agreement with the third-party from the accident for $12,000. The employer sought to adjudicate its worker's compensation lien in excess of $20,000. Without conducting an evidentiary hearing, the trial court reduced the employer's lien recovery to $2,702.96 less 25% in attorney fees. The trial court further concluded that the second injury was a separate incident. On appeal, this court remanded the case to the trial court to conduct an evidentiary hearing because there was no factual basis to support the court's earlier findings. This court said, "[p]ursuant to section 5(b), to the extent that a recovery is had from a third party, an employer is entitled to

13

be reimbursed for the compensation benefits paid.  To hold otherwise would be to permit the employee to receive a double recovery, one from the third party and the other from his own employer." *Fret*, 248 Ill. App. 3d at 326.  Accordingly, an evidentiary hearing was necessary to determine whether there were two separate, distinct injuries resulting in two distinct claims and what amount of the settlement was attributable to the employer's lien.  *Id*.

In the case before us, the primary distinction is the fact that the arbitrator conducted an evidentiary hearing.  Although there was no transcript of that hearing, the arbitrator's findings were based upon testimony and medical reports and documentation.  Consequently, there was evidence to support the arbitrator's award.  Moreover, our case did not involve a question of two distinct injuries requiring fund allocation; rather, the arbitrator reduced Johnson's third-party recovery as a result of a degenerative condition.

Overall, the statute was intended to protect against situations like the one before us where an employee obtains double recovery.  *In re Estate of Dierkes*, 191 Ill. 2d at 331-32; *Fret*, 248 Ill. App. 3d at 326.  While litigating her negligence claim, Johnson consistently and repeatedly reported that all of her medical expenses and time off of work were attributable to

14

1-10-0114

the June 2004 accident. The arbitrator awarded Johnson compensation for what was determined reasonable and related to the June 2004 accident. Then, while CMS pursued its lien to recover the amount expended in worker's compensation, Johnson argued that her medical expenses and time off of work were minimal as related to the June 2004 accident. Johnson's inconsistent argument was completely disingenuous. The trial court's reduced lien recovery allowed Johnson to maintain that portion of worker's compensation that CMS overpaid in addition to the amount of recovery from defendants that the trial court deemed excessive.

II. Remaining Contentions

We need not address CMS's remaining contentions.

CONCLUSION

We reverse the judgment of the trial court reducing CMS's worker's compensation lien and find that CMS is entitled to lien recovery on the entire arbitration award less 25% for attorney fees, *i.e.*, $94,960 less 25% or $71,220, and a *pro rata* share of reasonable costs and expenses, which have yet to be determined. Accordingly, we remand this case to the trial court to assess reasonable costs and expenses.

Reversed; remanded with instructions.

15

1-10-0114

LORYANN JOHNSON,

Appellee,

v.

AYALNESH A. TIKUYE AND AMIGO DRIVING SCHOOL,

Defendants

(The People *ex rel*. The Department of Central Management Services,

Intervening Plaintiff-Appellant).

No. 1-10-0114

Appellate Court of Illinois

First District, FIRST DIVISION

April 18, 2011

JUSTICE LAMPKIN delivered the judgment of the court, with opinion.

Presiding Justice Hall and Justice Hoffman concurred in the judgment and opinion.

Appeal from the Circuit Court of Cook County.

The Hon. William Maddux, Judge Presiding.

16

## COUNSEL FOR INTERVENING PLAINTIFF-APPELLANT

Lisa Madigan, Attorney General, State of Illinois, and

Michael A. Scodro, Solicitor General, Chicago, IL 60601

OF COUNSEL: Evan Siegel, Assistant Attorney General

## COUNSEL FOR APPELLEE

Frank A. Santilli & Associates, Chicago, IL 60602

OF COUNSEL: Laura Di Andrea-Iversen