# Illinois Official Reports

## Appellate Court

---

### *Hunt v. Herrod*, 2019 IL App (3d) 170808

---

| | |
|---|---|
| Appellate Court Caption | THANE HUNT, Plaintiff-Appellant, v. MAURIO HERROD, Defendant (The City of Peoria, Intervenor-Appellee). |
| District & No. | Third District<br>Docket No. 3-17-0808 |
| Filed<br>Rehearing denied | February 15, 2019<br>April 10, 2019 |
| Decision Under Review | Appeal from the Circuit Court of Peoria County, No. 11-L-246; the Hon. Stephen A. Kouri and the Hon. Michael P. McCuskey, Judges, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | Jeff Green, of Peoria, for appellant.<br><br>John G. Dundas, of Hasselberg Grebe Snodgrass Urban & Wentworth, of Peoria, for appellee. |
| Panel | JUSTICE O'BRIEN delivered the judgment of the court, with opinion.<br>Justices Carter and Wright concurred in the judgment and opinion. |

¶ 1        While on duty as a police officer for the City of Peoria (Peoria), plaintiff, Thane Hunt, was injured in a car accident caused by defendant, Maurio Herrod. Hunt suffered another injury to his back in January 2010 while at a police training. Hunt filed a lawsuit against Herrod, Peoria intervened, and Hunt and Herrod settled their action for $75,000. Peoria asserted a workers' compensation lien of $125,899.50 on the settlement. The trial court determined that Peoria was entitled to 10% of the lien amount and awarded it a lien of $12,589.95. On reconsideration, the trial court determined that Peoria was entitled to the entire lien amount. Hunt appealed. We reverse.

¶ 2                                                  FACTS

¶ 3        On September 27, 2009, plaintiff, Hunt, was rear-ended by defendant, Herrod, while Hunt was working as a police officer for intervenor, Peoria. Hunt injured his back in the accident, sought medical treatment, and participated in physical therapy. He was released for full-duty work on December 3, 2009. On January 25, 2010, Hunt participated in a training exercise. That evening he experienced back pain and sought medical attention. He had emergency surgery on January 29, 2010, which did not yield a positive outcome.

¶ 4        Hunt filed a workers' compensation claim for the training incident but did not initially file a claim for the car accident. He filed for a line-of-duty pension with the police pension board, alleging an inability to work due to injuries from the September 2009 and January 2010 incidents. The board determined that Hunt could not return to full-duty police work and was entitled to a disability pension but denied his request for a line-of-duty pension. The board found that Hunt's condition was not caused by any work-related injury, specifically finding that he failed to prove his low back condition was caused, aggravated, or accelerated by either the September or January incidents.

¶ 5        Hunt filed a personal injury action against Herrod. Peoria intervened, asserting a $125,899.50 lien on any recovery to which Hunt was entitled. Hunt and Herrod settled their action for $75,000, and Herrod is not involved in this appeal. Hunt filed a motion to adjudicate Peoria's lien, seeking a reduction of the lien to $0 based on Peoria's refusal to respond to Hunt's discovery requests and Peoria's lack of evidence linking the lien to the car accident payments. Peoria responded to Herrod's discovery requests, producing payment logs from Peoria's third-party administrator, which allocated payments of $5325.36 to the September 27, 2009, accident and $119,880.13 to the January 25, 2010, incident. The logs were admitted into evidence. The logs also indicated each injury was given a different claim number.

¶ 6        A hearing took place on Hunt's motion to adjudicate the lien on June 21, 2016. Peoria argued that the workers' compensation statute did not require the lienholder to prove any causation, the only proof necessary was that compensation was paid. The trial court rejected the argument and stated that Peoria was required to provide a "common nexus" between the injury and the settlement and to prove the lien amount and that the lien was related to Hunt's workers' compensation injury.

¶ 7        Ed Hopkins, senior human resource specialist for Peoria, testified. He was responsible for the city's risk management, safety, workers' compensation, and liability programs. He determined whether to accept a workers' compensation claim. He was involved in managing

Hunt's claim. Hopkins accepted Hunt's claim for the September 2009 accident. He received a notice of claim for the January 2010 injury, but he did not authorize any workers' compensation payment for that claim. Hopkins prepared a document in preparation of trial showing that Peoria paid $125,899.50 in medical bills for Hunt. The document did not include an injury date or claim number. He also explained the third-party administrator payment logs that indicated two different claims for Hunt's injuries and two separate payout totals: $5325.36 for the car accident and $119,880.13 for the training injury.

¶ 8        Hunt testified. He worked for the Peoria Police Department in the traffic division in 2009. He was rear-ended while on duty on September 27, 2009. He saw the department doctor, participated in physical therapy, and was released for full-duty work in December 2009. In total, he missed three days of work and was on light duty for two weeks. He had a magnetic resonance imaging (MRI) after the car accident; its results indicated he did not require surgery. Only physical therapy was recommended. Hunt had a history of low back pain, injuries, and aggravations prior to the motor vehicle accident. He experienced flare-ups of pain and rated his usual back pain as a 1 or 2 on a scale of 1 to 10, sometimes a 3. His pain increased after the September accident, but he was back to his normal level of discomfort when he returned to work in December 2009. At that time, he felt good. He participated in and completed part of the training in January 2010 but left early to appear in court. He told the training officers before the training that his back pain was at a level of 1 or 2. He did not report an injury during the session. When he returned home that evening, he experienced severe pain in his lower back, at levels he rated at 6 to 8 out of 10. He also suffered numbness below his waist in his saddle area and lost the ability to properly use his right leg. The symptoms were not like any he had ever experienced. He sought medical attention, had an MRI, and based on its results, underwent emergency back surgery.

¶ 9        The trial court entered an order on August 10, 2016, finding that the evidence depositions of Hunt's medical expert, Kube, and Peoria's independent medical examination doctor, Singh, used at the pension board hearing were not admissible because the doctors were not unavailable. The court also found that Peoria had a $125,899.50 lien and that a "portion of expense should be allocated to the accident as an aggravating factor to what is a chronic, pre-existing back injury." The court determined that Peoria was entitled to 10% of its lien amount, or $12,589.95.

¶ 10        Peoria moved for reconsideration, or in the alternative, Rule 304(a) language. Ill. S. Ct. R. 304(a) (eff. Mar. 8, 2016). It argued there were no facts to support the trial court's allocating of funds based on aggravation of a preexisting injury. Hunt responded to the motion to reconsider, arguing in the alternative, among other issues, that the trial court should adjudicate the lien to $5325.36, the amount documented in the payment logs as compensation for the September 2009 injury. On October 26, 2017, the trial court entered an order granting reconsideration. It found that because Peoria continued to pay workers' compensation benefits to Hunt after he returned to work in December 2009, Peoria was entitled as a matter of law to the entire $75,000 settlement amount to satisfy its lien. Hunt appealed.

¶ 11                                                      ANALYSIS

¶ 12        Hunt raises three issues on appeal: whether Peoria was entitled to the entire settlement amount, whether the court should have allowed the evidence depositions of his doctors, and whether Hunt was collaterally estopped from relitigating the cause of his injury.

¶ 13     The first issue we consider is whether the trial court erred in finding Peoria was entitled to the entire settlement amount of $75,000 to satisfy its lien. Hunt argues the trial court erred in awarding Peoria any amount on its workers' compensation lien, maintaining that the court failed to distinguish which benefits corresponded to which of his two injuries and erred in not requiring Peoria to present medical evidence in support of its lien. We agree.

¶ 14     An employee is limited to compensation under the Workers' Compensation Act (Act) for on-the-job injuries. 820 ILCS 305/5(a) (West 2016). When some person other than the employer caused the injury and is legally liable for damages and the employee reaches a settlement with the third party, the employer is entitled to amounts paid out for the employee under the Act and a lien on the employee's recovery. 820 ILCS 305/5(b) (West 2016). An employer is statutorily provided a lien on the employee's recovery that equals the amount of the workers' compensation benefits paid or owed. *Johnson v. Tikuye*, 409 Ill. App. 3d 37, 41 (2011) (citing *In re Estate of Dierkes*, 191 Ill. 2d 326, 328 (2000)).

¶ 15     An employer is granted a statutory lien on amounts an employee receives from third-party tortfeasor equal to amount of workers' compensation benefits it paid the employee. *Smith v. Louis Joliet Shoppingtown L.P.*, 377 Ill. App. 3d 5, 7 (2007). Employers are provided a right under section 5(b) to recover amounts paid for workers' compensation where the employee settles with the third-party tortfeasor, "regardless of whether a lien has been asserted." *Scott v. Industrial Comm'n*, 184 Ill. 2d 202, 216 (1998). An employer is not required to bring an action to protect its lien. *Hartford Accident & Indemnity Co. v. D.F. Bast, Inc.*, 56 Ill. App. 3d 960, 963 (1977).

¶ 16     A trial court may hold an evidentiary hearing to adjudicate a lien where there are multiple claims that could be attributable to the injured party's condition in order to decide what amount of the workers' compensation lien attaches to the settlement. *Fret v. Tepper*, 248 Ill. App. 3d 320, 328 (1993). At the hearing, the court should determine what amount of the settlement should be attributed to each of the incidents. *Johnson*, 409 Ill. App. 3d at 43. Where the employer has paid more compensation than the employee recovered from the third party, the employer is entitled to the entire recovery, less fees and costs. *Id.* at 42. This court reviews issues regarding the interpretation of the Act *de novo*. *Evans v. Doherty Construction, Inc.*, 382 Ill. App. 3d 115, 119 (2008).

¶ 17     At the evidentiary hearing here, Peoria presented the testimony of Hopkins, the city's human resources specialist. Hopkins said that he did not approve any workers' compensation payments for the January 2010 injury as the city did not believe there was an injury. He authorized payments for the September 2009 accident in the amount of $125,899.50. Peoria submitted a payment log that Hopkins said he prepared in advance of the trial and indicated payments for Hunt's workers' compensation injury totaled $125,899.50. He also explained payment logs submitted in discovery to Hunt that were generated by Peoria's third-party claim administrator and indicated two claims with injury dates of September 27, 2009, and January 25, 2010. Various payments were allocated to each claim. The logs showed $5325.36 for the car accident and $119,880.13 for the training injury.

¶ 18     Hunt argues on appeal, as he did throughout the proceedings, that Peoria was required to establish a nexus between the workers' compensation payments and Hunt's two injuries. Peoria maintained throughout the proceedings that it was not required to demonstrate that the workers' compensation payments were related to either the car accident or the training injury. According to Peoria, the fact that it paid $125,899.50 in compensation entitled it to the entirety

- 4 -

of Hunt's $75,000 settlement. The court first found that a portion of Peoria's lien "should be allocated to the accident as an aggravating factor to what is a chronic, pre-existing back injury." The court determined Peoria was entitled to 10% of its lien or $12,589.95. On reconsideration, the trial court agreed with Peoria, finding that since Peoria continued to pay workers' compensation benefits, it was entitled to the entire lien as a matter of law. We find that both decisions of the trial court were incorrect.

¶ 19 *Fret*, 248 Ill. App. 3d 320, is instructive. There, like here, the plaintiff suffered an on-the-job injury from a car accident, was treated, and released for full-time duty. He sued the at-fault driver in the accident and settled his complaint for $12,000. *Id.* at 322-23. He suffered a second injury, also on the job. *Id.* at 322. After the plaintiff moved to adjudicate his employer's lien, the trial court determined that the employer was only entitled to recover its lien on the injuries that were attributed to the first accident and the third party, as the second one was attributable solely to the employer. *Id.* at 323. The reviewing court reversed and remanded for an evidentiary hearing to decide what payments attached to the settlement. *Id.* at 328.

¶ 20 The *Fret* court noted that an employer's lien "should extend to only those expenses attributable to the medical aggravation of the injury." *Id.* at 327. Peoria did not present any expert medical evidence connecting its workers' compensation payments to the car accident injury. Neither party presented any medical evidence. There was no medical evidence of an aggravation, as the court originally determined. The only testimony regarding Hunt's medical issues was his own. Hunt testified to the chronic nature of his back pain, that he had returned to his baseline levels of discomfort when he returned to work in December 2009, and that the training injury caused him levels of pain he had not previously experienced.

¶ 21 Peoria did not present any evidence that connected the payments made for the training injury to the settlement. The only witness presented by Peoria was Hopkins, the human resource specialist. His testimony did not and could not establish a nexus between the payments and Hunt's injuries. There was not any medical evidence to establish whether there were separate injuries or an aggravation of prior injuries. Peoria's assertion that it denied workers' compensation benefits for the second injury does not establish that injury was connected to the car accident. Hunt was cleared to return to work after being medically treated for the injuries he sustained in the accident. He testified he had returned to his baseline level of discomfort and there is no evidence he was not able to fully perform his duties as a police officer after recovering from the injuries he suffered in the car accident.

¶ 22 Contrary to its assertions, Peoria is not entitled to a lien merely because it paid workers' compensation benefits. Rather, it must establish that the payments it made were connected to the injury for which the employee recovered from the third party. The trial court did not have that evidence and could not therefore adjudicate Peoria's lien. We find the trial court erred in determining Peoria was entitled to the entire settlement amount without establishing a nexus between the payments and the settlement injury. We further find that Peoria has waived any argument that its payments were connected to the training injury as it persisted in the trial court in arguing that it was not required to prove any nexus. On remand, Peoria should be allowed to show what it paid out for the car accident. Those payments end when Hunt is medically cleared to return to full duty in December 2009. Peoria cannot, however, argue it is entitled to the settlement proceeds for payments it made for the training injury.

¶ 23    The next issue is whether the trial court erred in rejecting evidence depositions of doctors Kube and Singh, both of whom were deposed for the pension board proceeding. The parties agreed that if the deposition of his doctor, Kube, was admitted, Singh's deposition should also be admitted. Hunt argues that Kube's deposition would have established that his injuries resulted from two distinct incidents, the car accident and the training incident.

¶ 24    Illinois Supreme Court Rule 212(b) (eff. Jan. 1, 2011) allows an evidence deposition of a physician or surgeon to be introduced into evidence at trial on the motion of either party, and regardless of the deponent's availability and without prejudicing either party's right to call him as a witness. The need for an affidavit to establish the unavailability of a deponent as required under Illinois Supreme Court Rule 222(f)(3) (eff. Jan. 1, 2011) is not necessary when the deponent is a physician or surgeon. *Zaragoza v. Ebenroth*, 331 Ill. App. 3d 139, 143 (2002). This court will not reverse the trial court's decision on the admissibility of evidence absent an abuse of discretion. *Id.*

¶ 25    The trial court found Kube's deposition was inadmissible because he was not unavailable to testify at trial. As a doctor, his availability is immaterial to the admissibility of his evidence deposition and his deposition should have been admitted on Hunt's motion. Hunt and Peoria agreed that if Kube's deposition was admitted, Singh's deposition would also be admitted so neither evidence deposition was considered by the court. As determined above, the trial court could not allocate the workers' compensation payments between Hunt's injuries because no medical evidence was admitted. The medical testimony in the depositions is necessary for the trial court to properly determine to what portion of the lien Peoria was entitled as reimbursement for payments it made for the injury Hunt suffered in the car accident. On remand, the depositions should be admitted.

¶ 26    Lastly, we address the issue of collateral estoppel, which Peoria submits as an alternative basis to affirm the trial court. Peoria argues that the doctrine bars Hunt from relitigating whether he suffered an injury from the January 2010 training as it was determined by the pension board that he did not. The trial court rejected the collateral estoppel argument on several occasions and Peoria did not appeal or cross-appeal that determination. See Ill. S. Ct. R. 303(a)(3) (eff. May 30, 2008) (after appeal filed, any other party may appeal separately or file a cross-appeal by filing a notice of appeal). Peoria was not entitled to argue any errors regarding collateral estoppel without appealing the issue. *Martis v. Grinnell Mutual Reinsurance Co.*, 388 Ill. App. 3d 1017, 1024 (2009) ("[a]ppellees may not argue alleged errors unless they timely file a cross-appeal"). We find the issue is not properly before this court.

¶ 27                                  CONCLUSION

¶ 28    For the foregoing reasons, the judgment of the circuit court of Peoria County is reversed and the cause remanded.

¶ 29    Reversed and remanded.