# Illinois Official Reports

## Appellate Court

---

### *Burdess v. Cottrell, Inc.*, 2020 IL App (5th) 190279

---

| | |
|---|---|
| Appellate Court Caption | GREGORY L. BURDESS and LISA BURDESS, Plaintiffs-Appellees, v. COTTRELL, INC.; GENERAL MOTORS, LLC; and AUTO HANDLING CORPORATION, Defendants (Continental Indemnity Company, Intervenor-Appellant). |
| District & No. | Fifth District<br>Nos. 5-19-0279, 2-20-0021 cons. |
| Filed | December 1, 2020 |
| Decision Under Review | Appeal from the Circuit Court of St. Clair County, No. 16-L-189; the Hon. Christopher T. Kolker, Judge, presiding. |
| Judgment | Affirmed in part and reversed in part; cause remanded. |
| Counsel on Appeal | Jeffrey E. Kehl and Storrs W. Downey, of Bryce Downey & Lenkov LLC, of Chicago, for intervenor-appellant.<br><br>Roy C. Dripps, Charles W. Armbruster III, and Michael T. Blotevogel, of Armbruster, Dripps, Winterscheidt & Blotevogel, LLC, of Maryville, and Brian M. Wendler, of Wendler Law, P.C., of Edwardsville, for appellees. |

Panel                JUSTICE OVERSTREET delivered the judgment of the court, with opinion.

Presiding Justice Welch and Justice Boie concurred in the judgment and opinion.

## OPINION

¶ 1      This is a consolidated appeal of orders entered by the circuit court of St. Clair County on June 20, 2019, and December 17, 2019, holding the appellant, Continental Indemnity Company (Continental), in contempt of court for failing to comply with discovery orders entered pursuant to Illinois Supreme Court Rule 213 (eff. Jan. 1, 2018) and Rule 214 (eff. July 1, 2018) and for failing to comply with an order to produce discovery sought by the plaintiffs, Gregory L. Burdess (Gregory) and Lisa Burdess, in a discovery deposition subpoena. For the following reasons, we affirm in part and reverse in part and remand for further proceedings.

¶ 2                               BACKGROUND

¶ 3      On April 4, 2016, the plaintiffs filed a seven-count complaint against the defendants, Cottrell, Inc. (Cottrell), General Motors, LLC (GM), and Auto Handling Corporation (AHC), seeking damages for employment-related injuries Gregory sustained on April 28, 2014, when he fell from the deck of a vehicle transportation rig while working for Jack Cooper Transport Company, Inc. (Jack Cooper).

¶ 4      On July 9, 2018, Continental filed a motion for leave to file a petition to intervene. The motion provided that the request was brought pursuant to section 2-408 of the Code of Civil Procedure (Code) (735 ILCS 5/2-408 (West 2018)) for the purpose of allowing Continental to protect and secure a lien as provided in section 5(b) of the Workers' Compensation Act (Act) (820 ILCS 305/5(b) (West 2018)). The motion alleged that Gregory brought a workers' compensation claim against his employer, Jack Cooper; that Continental was the workers' compensation insurance carrier for Jack Cooper; that Continental had paid workers' compensation benefits to or on behalf of Gregory; and that Continental sought leave to intervene to secure a lien on any award or judgment with which the plaintiffs may be compensated in the litigation against the defendants.

¶ 5      Continental requested, *inter alia*, that all orders of the circuit court be made to indemnify, protect, and secure Continental's lien out of any fund or judgment with which the defendants may compensate the plaintiffs and that the circuit court order that no funds from any settlement of the claim be disbursed without Continental's approval.

¶ 6      On August 14, 2018, the circuit court granted Continental's motion for leave to file a petition to intervene, without objection. On August 30, 2018, Continental entered its appearance as intervenor. On October 4, 2018, the plaintiffs issued interrogatories to Continental, pursuant to Illinois Supreme Court Rule 213 (eff. Jan. 1, 2018) and a request for production of documents, pursuant to Illinois Supreme Court Rule 214 (eff. July 1, 2018).

Notably, in the body of these pleadings—albeit not in the caption—the plaintiffs referred to Continental as a "Defendant."[1]

¶ 7    On January 14, 2019, Continental served its answer and response to the plaintiffs' interrogatories and request for production of documents. In the answer and response, Continental asserted the following objection to each interrogatory and request:

> "Intervenor objects to answering written discovery or participating in this lawsuit beyond its limited role as provided for in 820 ILCS 305/5(b), which provides that its intervention is for purposes of insuring that all orders of court after hearing or judgment shall be made for the protection of intervenor and its lien interest. See also *Jackson v. Polar-Mohr*, 115 Ill. App. 3d 571, 574 ([1983]). (Since the employer's interest in the judgment is in the form of a lien … his intervention is limited to protecting the lien and all orders of the Court after hearing and judgment.)"[2]

Notwithstanding the nonparty objection, Continental acknowledged that it was subject to the subpoena power of the circuit court and thus produced an electronic file containing materials related to Gregory's workers' compensation claim, along with an itemization of the workers' compensation benefits paid to Gregory for which Continental was asserting its lien.

¶ 8    On January 29, 2019, the plaintiffs filed a motion to compel discovery and for sanctions for Continental's failure to comply with their discovery requests. The motion alleged that by intervening as the workers' compensation lien holder, Continental "became a party to this action and was subject to *** discovery rules." Citing Illinois Supreme Court Rule 213 (eff. Jan. 1, 2018) and Rule 214 (eff. July 1, 2018), the plaintiffs alleged in the motion to compel that, notwithstanding Continental's production of the electronic workers' compensation file to support its lien, Continental failed to provide verifications to the interrogatories and request for production. The plaintiffs alleged that Continental's responses were in bad faith and requested the circuit court to, *inter alia*, enter an order compelling Continental to fully respond to the discovery requests without objection and warning Continental that any further noncompliance "will result in the imposition of severe and extreme sanctions."

¶ 9    On February 12, 2019, Continental filed a response to the motion to compel discovery and for sanctions. Continental indicated that it had, in fact, responded to each discovery request with the nonparty objection, as contemplated by Rules 213 and 214, except for the production of the nonprivileged materials associated with Gregory's workers' compensation claim for which it was asserting its lien. Continental reiterated that it did not become a party to the litigation by intervening and that its rights and responsibilities were limited to protecting its lien, pursuant to section 5(b) of the Act (820 ILCS 305/5(b) (West 2018)).

¶ 10   On March 11, 2019, after a hearing, the circuit court entered an order granting the plaintiffs' motion to compel, overruling Continental's objections, ordering Continental to fully respond to the discovery within 14 days, and denying the plaintiffs' request for sanctions.

¶ 11   On March 25, 2019, Continental served its answer and response to the interrogatories and request for production of documents in which Continental reasserted the nonparty objection. Subject to the nonparty objection, Continental answered 15 of the 16 interrogatories. Interrogatory number 13 requested Continental to "[s]tate the names and job titles of all

---

[1]The captions identify the defendants as Cottrell, GM, and AHC.

[2]This objection is hereinafter referenced as the "nonparty objection."

- 3 -

persons in your corporate control group and set forth all facts which support the control group status for each." Continental objected to interrogatory number 13 as follows: "Objection, no control group within the corporate structure of Intervenor has been implicated in this lawsuit and, therefore, this Interrogatory is vague, ambiguous[,] and unanswerable and neither seeks relevant information nor information reasonably calculated to lead to the discovery of relevant information."

¶ 12    Also subject to the nonparty objection, Continental responded to 45 of the 48 requests to produce and asserted additional objections to request numbers 1, 13, and 42. Request number 1 sought:

> "Copies of any workers' compensation claims, and reports of injuries completed by supervisors and/or drivers employed by [Jack Cooper] and its corporate affiliates in your possession since five (5) years prior to the year of the manufacture of the trailer in question wherein a party alleged injuries sustained from a fall from a trailer upper deck or ladder in the [Jack Cooper] or Pacific Motor Trucking Company *** fleets."

Continental responded to request number 1 with the nonparty objection and added: "Moreover, Intervenor has hundreds of claim files since it has insured [Jack Cooper] and has no knowledge where the trailer in question was manufactured. Subject to such objection and without waiving that objection, Intervenor can produce a claim listing of all claims involving [Jack Cooper]."

¶ 13    Request number 13 sought "[c]opies of any medical records of the Plaintiff already received by you or your attorneys from any source other than from the Plaintiff[']s] attorneys." Continental responded to request number 13 with the nonparty objection and added:

> "Subject to said objection, and without waiving same, Intervenor has no such documents other than Plaintiff Gregory Burdess'[s] workers' compensation file materials for the subject incident previously produced herein. In addition, Intervenor is in possession of medical records for three additional workers' compensation claims made by Plaintiff, Gregory Burdess. Those claim files are voluminous and will only be produced upon Plaintiffs' specific request."

¶ 14    Request number 42 directed Continental to "[p]roduce a true copy of the printout of injury summaries from your computer database(s) for injuries to [Jack Cooper] drivers since you began insuring [Jack Cooper] for workers['] compensation claims." Continental responded to request number 42 with the nonparty objection and added: "Subject to said objection, without waiving same and in addition to Intervenor's workers' compensation file materials previously produced herein, Intervenor can produce a claim listing of all claims involving Jack Cooper Transport Company."

¶ 15    On April 26, 2019, the plaintiffs filed a motion for sanctions, contending Continental's responses to the discovery requests were insufficient. In its response to the motion for sanctions, Continental reiterated that it was not subject to the discovery requests due to its limited role as intervenor. Notwithstanding its continuing nonparty objection, Continental indicated that it had produced nearly 500 pages of documents related to Gregory's workers' compensation file. Continental further asserted that it had timely responded to the discovery requests on March 25, 2019, and contended that the plaintiffs' motion for sanctions was improper because the plaintiffs made no effort to resolve the discovery dispute, pursuant to Illinois Supreme Court Rule 201(k) (eff. July 1, 2014), prior to filing the motion for sanctions.

¶ 16 In the alternative, Continental contended that its discovery responses complied with Rules 213 and 214. Continental indicated that it had produced all medical records and bills in its possession that were associated with Gregory's workers' compensation claim, identified witnesses with relevant knowledge, produced all records in support of its lien, produced all information in its possession pertaining to surveillance of Gregory, and identified all information in its possession regarding other claims involving Jack Cooper. Continental further contended that the identity of any alleged control group at Continental was irrelevant to the lawsuit. Finally, Continental alleged that it had compiled a listing of all claims involving Jack Cooper and indicated that "[t]he gathering of this information was labor intensive and necessarily took time as it required a manual review of each of [Jack Cooper's] hundreds of claim files."

¶ 17 On May 14, 2019, a hearing was conducted on the plaintiffs' motion for sanctions. There, the plaintiffs' counsel complained that Continental had produced a list of workers' compensation claims, containing over 3000 injury claims of nonparty employees of Jack Cooper. The plaintiffs' counsel protested that Continental made no attempt to sort through the injury claims to determine which ones involved injuries similar to Gregory's—falls from the upper decks of the Jack Cooper vehicle transportation rigs. The plaintiffs' counsel alleged that what Continental produced was "not even close to being acceptable" and indicated that if Continental did not want to expend the effort to produce the injury records involving upper deck falls, counsel would sort through them himself.

¶ 18 Counsel for Continental responded that Continental had compiled a list of all claims involving Jack Cooper "to try and accommodate counsel." He explained that "[i]t was an onerous undertaking. It was a manual undertaking going through hundreds of claims files, but we put it together for him." Counsel for Continental asserted that "now that we have this list put together," he could look into whether it would be possible to electronically search to determine which of the claims involved upper deck falls.

¶ 19 At the conclusion of the hearing, the circuit court entered an order overruling Continental's objections, ordering Continental to pay the plaintiffs' attorney fees related to the motion for sanctions, ordering Continental to fully answer the discovery within 30 days, and effective June 13, 2019, imposing sanctions on Continental in the amount of $150 for every day that it did not fully comply with the discovery requests.

¶ 20 On June 13, 2019—the date the daily sanctions were to commence—Continental filed a motion for a finding of friendly contempt, pursuant to Illinois Supreme Court Rule 304(b)(5) (eff. Mar. 8, 2016), in which it requested the circuit court to impose a nominal penalty for Continental's failure to comply with the discovery orders. Continental sought the finding of friendly contempt as an avenue to appeal the issue of whether an intervenor who intervenes in a lawsuit to protect its workers' compensation lien is obligated to participate in discovery as a full party to the litigation.

¶ 21 On June 20, 2019, after a hearing, the circuit court entered an order granting Continental's motion for a finding of friendly contempt, imposing a nominal penalty of $1 per day against Continental and ruling that the May 14, 2019, order imposing sanctions against Continental in the amount of $150 per day remained in effect. Continental filed a timely notice of appeal (First Appeal).

¶ 22 On September 26, 2019, while the First Appeal was pending, the plaintiffs issued to Continental a notice of discovery deposition pursuant to subpoena, to be conducted on October

30, 2019, in Madison County, Illinois. The subpoena ordered Continental to provide at the deposition the same information the plaintiffs had requested in their earlier request for production of documents, pursuant to Rule 214. The previous request for production was attached to the subpoena as Plaintiff's Exhibit A.

¶ 23 On October 18, 2019, Continental filed a motion to quash subpoena. In the motion, Continental asserted that it is an Iowa corporation with its principal place of business in Omaha, Nebraska, and it transacted no business in Madison County or St. Clair County. Accordingly, Continental contended that the deposition should proceed in Omaha, Nebraska. Second, Continental alleged that the information requested in the subpoena was the subject of discovery orders pending in the First Appeal. Thus, Continental requested the circuit court to stay the subpoena until after the disposal of the First Appeal. Third, Continental objected to the subpoena on the following bases: it sought workers' compensation claim files for nonparties containing information protected by the Health Insurance Portability and Accountability Act of 1996 (HIPAA) (42 U.S.C. § 201 *et seq.* (2018)), it sought information that was irrelevant to Continental's workers' compensation lien or to the underlying litigation, the request was disproportionate because the burden and expense to produce the files outweighed any likely benefit, the information sought was subject to attorney/client privilege and insurer/insured privilege, and the information sought was protected from disclosure under the Illinois Insurance Code (215 ILCS 5/1 (West 2018)). Finally, Continental requested additional time to produce the discoverable records from Gregory's prior workers' compensation claims. For these reasons, Continental requested the circuit court to enter an order quashing the subpoena. Attached as Exhibit 2 to the motion to quash subpoena was an affidavit of Jeffrey Silver, secretary for Continental, dated October 15, 2019. Silver asserted in the affidavit, *inter alia*, that Continental would need until November 15, 2019, in which to identify, redact, and log all information that it considered to be privileged or otherwise nondiscoverable.

¶ 24 On November 25, 2019, the plaintiffs filed a response to Continental's motion to quash subpoena in which they asserted, *inter alia*, that notwithstanding Silver's affidavit which requested an extension to November 15, 2019, to date, no log had been supplied to the plaintiffs and no records had been produced.

¶ 25 On November 26, 2019, a hearing was held on the motion to quash subpoena. As reflected in a bystander's report of this hearing, Continental argued all the points raised in its motion to quash subpoena, and the plaintiffs argued all the points raised in their response to the motion to quash. In addition, the plaintiffs contended that Continental should not be allowed to argue the same objections and/or raise new objections via the motion to quash because the deadline to comply with the prior orders had lapsed.

¶ 26 Regarding the production of the claim files of the nonparty Jack Cooper employees, the plaintiffs asserted that they were not requesting medical records but only documents identifying the type of accident involved, electronic reports and/or summaries of the injuries, supervisors' reports of injuries, and drivers' reports of injuries. In response to Continental's argument that the claim information for the nonparty employees was irrelevant, the plaintiffs indicated that they obtained by court order information from other insurance carriers that proved defendant AHC had not produced all information on claims similar to Gregory's and the claim information from Continental was needed to determine whether AHC had other similar claims against it.

¶ 27 Regarding the burden associated with producing the nonparty employee records, the circuit court questioned Continental's counsel regarding how much time and effort would be necessary to gather the information. Continental's counsel placed a telephone call to obtain an answer, but the representative who could provide the information was unavailable. Accordingly, the circuit court continued the hearing to December 9, 2019, so counsel could gather the information necessary to establish the burden associated with producing the requested information.

¶ 28 The hearing reconvened on December 9, 2019. As reflected in a bystander's report of the hearing, Continental referenced the supplemental affidavit of Silver, which was filed in the circuit court on December 5, 2019. In the supplemental affidavit, Silver indicated that none of the workers' compensation claim files are electronically stored and are not searchable through any available computer system. On that basis, Silver set forth the time and effort that would be required to assemble, review, and extract information from approximately 3300 nonparty claim files.

¶ 29 Silver averred in the supplemental affidavit that locating and assembling the claim files would take a full day and, at the current wage rates of $16 to $17 per hour for the employees who would be assigned that task, the cost of locating and assembling the claim files would exceed $1500. Silver further averred that if specific information regarding the nature of the underlying accidents for the claim files sought were to be reviewed and summarized, the projected hours would consist of an additional 30 minutes per file, yielding an approximate cost of an additional $26,400 to $28,500.

¶ 30 Silver suggested in the supplemental affidavit that the plaintiffs' counsel be allowed to review the files as an alternative to Continental extracting the information sought. He averred that Continental would still incur substantial costs in that instance because the claim files contained personal health information of nonparties for whom HIPAA authorizations had not been executed, and thus the personal health information would need to be redacted if the plaintiffs' counsel were allowed to review the claim files. Moreover, Silver stated that if the plaintiffs' counsel examined the files, entries protected from disclosure under the attorney-client privilege, work product doctrine, insurer-insured privilege, and section 2-1003(e) of the Code (735 ILCS 5/2-1003(e) (West 2018)) would need to be identified and redacted. Silver asserted in the supplemental affidavit that such a task would require 1.5 hours per file to review and redact the protected information, for a total of 4950 hours at a cost of $50 per hour for a skilled individual, totaling over $200,000. Accordingly, Silver indicated that producing the requested information would impose an undue hardship and burden on Continental.

¶ 31 The figures in the supplemental affidavit establishing the burden and cost referred directly to producing the workers' compensation claim files. The supplemental affidavit references the effort necessary to identify "the nature of the underlying accident that resulted in the filing of the listed workers' compensation claims" but makes no direct reference to the burden and cost to produce the reports of injuries completed by supervisors and/or drivers employed by Jack Cooper involving falls from the trailers, as requested in paragraph 1 of the subpoena or the burden and cost to produce copies of all fleet injury reports filled out by drivers and/or supervisors involving falls from the upper decks as requested in paragraph 4 of the subpoena. The plaintiffs' counsel alleged that the burden to produce the injury record data was minimal as such could be generated by a "simple keystroke on a computer." Continental's counsel responded that he was unsure if the injury records were contained or accessible on a computer.

¶ 32     Although the plaintiffs' counsel produced no evidence rebutting Silver's supplemental affidavit, counsel emphasized that the plaintiffs were not conceding its accuracy. The plaintiffs' counsel again emphasized that the plaintiffs were not requesting medical information and asserted that if Continental maintained that the burden was too great, he would travel to the injury record location to sort through the records himself. Counsel argued in the alternative that he would pay the costs to ship the injury records so he could sort through the records with no burden to Continental.

¶ 33     At the conclusion of the hearing, the circuit court orally granted Continental's motion to quash in part and denied it in part. Continental advised the circuit court that it would disobey its ruling on the denied portion of its motion to quash, requested to be held in contempt of court so the ruling could be appealed, and requested the contempt penalty to be set at $25. On December 17, 2019, the circuit court entered its written order granting in part and denying in part Continental's motion to quash subpoena. The circuit court granted the motion to quash to the extent that it sought to conduct the deposition in Edwardsville, Illinois, and ordered that the deposition would proceed in Omaha, Nebraska. The motion to quash was further granted to the extent that the plaintiffs requested Continental to produce *all* of Gregory's workers' compensation claim information. Accordingly, the circuit court ordered Continental to produce Gregory's workers' compensation claim with all privileged information redacted and delineated in a privilege log.

¶ 34     The circuit court denied the motion to quash to the extent that it sought to relieve Continental of the obligation to produce workers' compensation claim forms and reports of injuries completed by supervisors and/or drivers and injury reports filled out by drivers and/or supervisors for injuries as requested in paragraphs 1 and 4 of the subpoena. The circuit court ordered Continental to make copies of the same available for inspection at the deposition. The circuit court found that the plaintiffs had not requested medical records or claim notes of nonparties. Accordingly, Continental was not required to produce those records nor any other requested documents that were identified by Continental in the privilege log. The circuit court ordered Continental to produce all other records within its possession, custody, and control as requested in the subpoena.

¶ 35     The circuit court observed Continental's refusal to comply with the order to produce the information requested in paragraphs 1 and 4 of the subpoena. Accordingly, the circuit court held Continental in contempt of court and imposed a penalty of $25 for its noncompliance. Continental filed a timely notice of appeal (Second Appeal). On January 23, 2020, this court entered an order consolidating the First Appeal with the Second Appeal.

¶ 36                                                    ANALYSIS

¶ 37     At the outset, we address a jurisdictional issue raised by the plaintiffs, who contend that if Continental were not a party to the underlying litigation, this court would have no jurisdiction over this appeal. Put another way, the plaintiffs claim that Continental could not raise the instant appeal but for its status as a party to the underlying litigation. We disagree. Illinois case law establishes that nonparties have standing to appeal contempt orders against them. See *Montes v. Mai*, 398 Ill. App. 3d 424, 426 (2010) (nonparty chiropractor had standing to appeal contempt order for his refusal to appear at deposition); *Crnkovich v. Almeida*, 261 Ill. App. 3d 997, 999 (1994) (nonparty nurses and nonparty counsel for defendant hospital appealed contempt order against them for nurses' refusal to answer questions at depositions per

- 8 -

counsel's instructions). We have jurisdiction over this appeal, regardless of whether Continental is a party or nonparty to the underlying litigation. Accordingly, we proceed with the merits of the appeal.

¶ 38        Continental raises the following two issues on appeal: (1) whether the circuit court erred by holding Continental in contempt of court and imposing a penalty for noncompliance with the discovery orders entered pursuant to the plaintiffs' discovery requests under Illinois Supreme Court Rule 213 (eff. Jan. 1, 2018) and Rule 214 (eff. July 1, 2018), and (2) whether the circuit court erred by holding Continental in contempt of court and imposing a penalty for noncompliance with the order to produce the information requested in the plaintiffs' discovery deposition subpoena.

¶ 39                        I. Rule 213 and Rule 214 Discovery Requests

¶ 40        We first determine whether the circuit court erred by holding Continental in contempt of court and imposing a penalty for noncompliance with the discovery orders entered pursuant to the plaintiffs' discovery requests under Illinois Supreme Court Rule 213 (eff. Jan. 1, 2018) and Rule 214 (eff. July 1, 2018).

¶ 41        "Because discovery orders are not final orders, they are not ordinarily appealable." *Reda v. Advocate Health Care*, 199 Ill. 2d 47, 54 (2002). "However, it is well settled that a contempt proceeding is an appropriate method for testing the correctness of a discovery order." *Id.* "When an individual appeals from a contempt sanction imposed for violating *** a discovery order, the contempt finding is final and appealable and presents to the reviewing court the propriety of that discovery order." *Id.* "[W]here the trial court's discovery order is invalid, a contempt judgment for failure to comply with the discovery order must be reversed." *In re Marriage of Bonneau*, 294 Ill. App. 3d 720, 723 (1998).

¶ 42        "Although a trial court's discovery order is ordinarily reviewed for a manifest abuse of discretion [citation], the proper standard of review depends on the question that was answered in the trial court." *Norskog v. Pfiel*, 197 Ill. 2d 60, 70 (2001). "If the facts are uncontroverted and the issue is the trial court's application of the law to the facts, a court of review may determine the correctness of the ruling independently of the trial court's judgment." *Id.* at 70-71. In this case, integral to our review of the propriety of the discovery orders is a determination of whether Continental—which intervened in the underlying litigation for the sole purpose of asserting its workers' compensation lien—should have been treated as a party to the litigation and made subject to the discovery mandates of Rules 213 and 214. This issue is a matter of law subject to *de novo* review. See *id.* at 71.

¶ 43        Here, Continental argues that it is not, and never has been, a party to this case. Accordingly, Continental contends that it was not subject to the plaintiffs' discovery requests under Rules 213 and 214 and the correlating discovery orders were invalid as a result. Conversely, the plaintiffs argue that by intervening, Continental became a party to the litigation and was bound to comply with the discovery requests under Rules 213 and 214.

¶ 44        Illinois Supreme Court Rule 213 (eff. Jan. 1, 2018) and Rule 214 (eff. July 1, 2018) govern discovery between parties. Rule 213(a) provides that "[a] party may direct written interrogatories to any other party." Ill. S. Ct. R. 213(a) (eff. Jan. 1, 2018). Similarly, Rule 214(a) provides that "[a]ny party may by written request direct any other party to produce *** specified documents." Ill. S. Ct. R. 214(a) (eff. July 1, 2018). Rule 214(e) addresses the procedure for obtaining information from nonparties as follows: "This rule does not preclude

an independent action against a person not a party for production of documents ***." Ill. S. Ct. R. 214(e) (eff. July 1, 2018). Accordingly, the supreme court rules are used to procure information from parties only, and independent measures must be taken to procure information from nonparties. See *id.*

¶ 45   Regarding intervention procedure, section 2-408(a)(1) of the Code provides, *inter alia*: "Upon timely application anyone shall be permitted as of right to intervene in an action: (1) when a statute confers an unconditional right to intervene ***." 735 ILCS 5/2-408(a)(1) (West 2018). Pursuant to section 2-408(f) of the Code: "An intervenor shall have all the rights of an original party ***." *Id.* § 2-408(f). Therefore, one who intervenes under this section of the Code—having all the rights of an original party—would be authorized to participate in discovery as a party and, as such, would be subject to the discovery mandates of Rules 213 and 214. See *id.*

¶ 46   Here, Continental brought its motion for leave to file a petition to intervene pursuant to section 2-408 of the Code (*id.* § 2-408) and cited section 5(b) of the Act as authority to intervene for purposes of protecting and securing its lien (820 ILCS 305/5(b) (West 2018)). The plaintiffs argue that section 5(b) of the Act created no more than the statutory unconditional right for Continental to intervene as referenced in section 2-408(a)(1) of the Code, but once the intervention was established, it was governed by section 2-408 of the Code. We disagree.

¶ 47   In *Madison Two Associates v. Pappas*, 227 Ill. 2d 474, 494 (2008), the Illinois Supreme Court observed section 1-108(b) of the Code (735 ILCS 5/1-108(b) (West 2002)), which "expressly provides that where proceedings are governed by some other statute, the other statute controls to the extent it regulates procedure, but that *** the Code *** applies to matters of procedure not regulated by the other statute." The *Pappas* court noted that the Property Tax Code (35 ILCS 200/1-1 *et seq.* (West 2002)) at issue in that case did not include a particular provision addressed to intervention in the circuit court. *Pappas*, 227 Ill. 2d at 494. Accordingly, the court held that the matter was to be governed by the intervention provisions of article II of the Code. *Id.* at 494-95; see also *In re Petition for Annexation of Unincorporated Territory to the Village of Palatine*, 234 Ill. App. 3d 927, 929-30 (1992) (where intervention is based on specific statute, courts look to that statute, not section 2-408 of the Code, for conditions limiting the intervention).

¶ 48   In this case, Continental intervened to protect its lien as authorized by the Act, which includes provisions regarding intervention in the circuit court. Section 5(b) provides that if the injured employee receives compensation from the employer, the employer may claim a lien on any judgment out of which the employee may be compensated from a third-party action. 820 ILCS 305/5(b) (West 2018). Section 5(b) further provides that "[t]he employer may, at any time thereafter join in the action upon his motion so that all orders of court after hearing and judgment shall be made for his protection." *Id.* Contrary to the plaintiffs' argument, because the Act contains provisions addressed to intervention in the circuit court, Continental's intervention is governed by the Act rather than article II of the Code. See *Pappas*, 227 Ill. 2d at 494-95; *Palatine*, 234 Ill. App. 3d at 929-30.

¶ 49   In addition to the stated statutes and supreme court rules, Illinois case law also establishes that intervenors under section 5(b) of the Act are limited in their role and are forbidden from participating as parties and being subject to discovery in the underlying suit. In *Sjoberg v. Joseph T. Ryerson & Son, Inc.*, 8 Ill. App. 2d 414, 417 (1956), the court held that the sole

- 10 -

purpose of allowing an employer to intervene in a lawsuit is for the employer to protect its workers' compensation lien. The *Sjoberg* court elaborated that "such intervention shall not extend to the intervening petitioner the right to participate in the conduct or trial of the suit, without the consent of [the] plaintiff." *Id.* at 418; see also *Pederson v. Mi-Jack Products, Inc.*, 389 Ill. App. 3d 33, 40 (2009) (absent consent of employee, employer's intervention is limited to ensuring that court protects its lien).

¶ 50       We observe that *Sjoberg* involved an intervenor that desired to participate in the trial and was forbidden from doing so without the plaintiff's consent (8 Ill. App. 2d at 417), and the instant case involves Continental, an intervenor which did *not* desire to participate in the trial beyond the limited purpose of protecting its lien, and the plaintiffs obtained discovery orders requiring Continental to further participate against its will. Nevertheless, section 5 of the Act limits intervenors in their roles and does not provide for automatic participation as parties in the underlying litigation. See *id.*

¶ 51       The plaintiffs contend that *Sjoberg* established that it is a plaintiff's choice whether to limit the role of an employer who chooses to intervene. We disagree and conclude that *Sjoberg* held that a plaintiff may limit the role of an employer who intervenes *and desires to participate in the trial*. See *id.* Such is not the case here. The plaintiffs cite no authority establishing that a circuit court has the power to mandate an intervenor under section 5(b) of the Act to participate as a party to the litigation against its will or to subject it to the discovery requirements incumbent on parties under Rules 213 and 214.

¶ 52       Also notable is *Jackson v. Polar-Mohr*, 115 Ill. App. 3d 571, 574 (1983), in which the court held that under the Act "an employer may intervene in an employee's cause of action at any stage prior to the satisfaction of judgment." The court continued: "Since the employer's interest in the judgment is in the form of a lien [citations], his intervention is limited to protecting the lien in all orders of the court after hearing and judgment [citation]." *Id.* Applying these principles, if an intervention pursuant to the Act may occur any time before the satisfaction of judgment, it follows that the intervention may very well occur after the litigation has concluded and after the judgment has been entered, so long as it precedes the satisfaction of the judgment. If the intervention occurred after the judgment was entered, the intervenor could not be a party to the litigation nor participate in discovery, thus confirming that an intervenor was not intended to be a party under the Act.

¶ 53       Taken a step further, "[a]n employer is not required to bring an action to protect its lien." *Hunt v. Herrod*, 2019 IL App (3d) 170808, ¶ 15. "Employers are provided a right under section 5(b) to recover amounts paid for workers' compensation where the employee settles with the third-party tortfeasor, 'regardless of whether a lien has been asserted.' " *Id.* (quoting *Scott v. Industrial Comm'n*, 184 Ill. 2d 202, 216 (1998)). Indeed, section 5(b) of the Act indicates that "[t]he employer *may*, at any time thereafter join in the action upon his motion so that all orders of court after hearing and judgment shall be made for his protection." (Emphasis added.) 820 ILCS 305/5(b) (West 2018). The fact that an employer is entitled to recover without intervening only further demonstrates that the employer was not intended to be a party under the Act. If an employer *were* intended to be a party, intervening would be a requirement, not an option, and there would be no language in the Act limiting the intervention to asserting and protecting the lien.

¶ 54       We further observe that in *Jackson*, when the circuit court granted leave to file a petition to intervene pursuant to the Act, it ordered the intervenor not to participate in the trial (115 Ill.

App. 3d at 572-73) and the reviewing court subsequently identified the intervenor as a nonparty (*id.* at 576). See also *Sheppard v. Rebidas*, 354 Ill. App. 3d 330, 334-35 (2004) (court obligated to protect interests of nonparty employer who intervenes to protect its lien because the nonparty employer cannot protect itself in settlements between employee and third party); *Brandt v. John S. Tilley Ladders Co.*, 145 Ill. App. 3d 304, 308 (1986) (court disagreed that intervenor was attempting to participate in discovery, as intervenor's interest was to have trial conducted on the merits and not dismissed at pretrial stage, consistent with protecting its lien); *Mistler v. Mancini*, 111 Ill. App. 3d 228, 231 (1982) (parties to litigation discover relevant information from third persons via subpoena).

¶ 55    Besides the foregoing principles, a contempt order also merits reversal "where the refusal to comply with the court's order constitutes a good-faith effort to secure an interpretation of an issue without direct precedent." *In re Marriage of Radzik*, 2011 IL App (2d) 100374, ¶ 67; see also *Doe v. Township High School District 211*, 2015 IL App (1st) 140857, ¶ 124 (civil contempt should not stand when noncompliance with discovery order is based on good faith effort to clarify an issue). That is what occurred in this case.

¶ 56    We acknowledge the plaintiffs' citation to *Willeford v. Toys "R." Us-Delaware, Inc.*, 385 Ill. App. 3d 265 (2008), in support of its allegation that Continental's motion for friendly contempt was not in good faith. We distinguish *Willeford*, however, because there the defendants' refusal to comply with the discovery order was not a good faith effort to secure an interpretation of an issue without precedent. See *Radzik*, 2011 IL App (2d) 100374, ¶ 67. Rather, the defendants in *Willeford* filed a motion for a protective order one year after their discovery responses were due and then subsequently filed a motion to reconsider the discovery order and did not file their motion for friendly contempt until over eight months later when they responded to the plaintiff's motion for sanctions. 385 Ill. App. 3d at 277. Observing that the discovery dispute had exceeded five years, the *Willeford* court concluded that the defendants did not act in good faith in challenging the discovery order through a motion for friendly contempt and refused to vacate the contempt order for that reason. *Id.*

¶ 57    Conversely, here, the record reflects that Continental's purpose in filing its motion for friendly contempt was not to cause undue delay or to dishonor the court, as was the case in *Willeford*, but rather to seek an appeal for a determination of an issue with no direct precedent (see *Radzik*, 2011 IL App (2d) 100374, ¶ 67), namely whether an intervenor under section 5(b) of the Act is considered a party in the underlying litigation and therefore subject to supreme court discovery rules. At the June 20, 2019, hearing on Continental's motion for friendly contempt, counsel for Continental indicated that "case law supports the notion that the role of the intervenor is limited" and an intervenor is "not required to participate in [full] discovery, but there's not been a clear pronouncement on that point by any Illinois [a]ppellate district." Counsel continued, "This is an opportunity, in our mind, for that *** pronouncement to be made."

¶ 58    This case is further distinguished from *Willeford* because, here, eight months passed from the time the plaintiffs issued their discovery requests until Continental filed its motion for friendly contempt, much less time than the five years in *Willeford*. See 385 Ill. App. 3d at 277. There is no evidence of any bad faith attributable to Continental in objecting as it did and filing its motion for friendly contempt for the said purpose of resolving an unprecedented issue on appeal. For these reasons, we find Continental exercised good faith in challenging the

- 12 -

discovery orders by filing the motion for friendly contempt, and we conclude that the contempt order merits reversal on this additional basis. See *Radzik*, 2011 IL App (2d) 100374, ¶ 67.

¶ 59     The plaintiffs contend that "[i]t is clear from the record" that the circuit court "imposed sanctions for failure to comply with its order long before Continental sought a finding of [friendly] contempt." We disagree. Although the circuit court entered its order imposing sanctions on May 14, 2019, the sanctions were not ordered to commence until June 13, 2019, the same date Continental filed its motion for friendly contempt. Thus, the plaintiffs' argument is unfounded. As noted, the discovery orders were improper, resulting in the sanctions for Continental's failure to comply with the discovery orders also being improper.

¶ 60     For the foregoing reasons, we conclude that Continental did not become a party to the underlying litigation by intervening to protect its lien under section 5(b) of the Act. Because Continental was not a party to the underlying litigation, it was not subject to the discovery mandates of Rules 213 and 214. As a result, the circuit court's discovery orders entered March 11, 2019, and May 14, 2019, were improper, as were the sanctions imposed in the latter order, and we reverse those orders. Because we conclude that the discovery orders were improper, we reverse the June 20, 2019, order holding Continental in contempt of court for violating the discovery orders.

¶ 61     We acknowledge the parties' additional opposing arguments regarding the timing of Continental's relevance, burden, and privacy objections. However, the nonparty objection raised by Continental was the threshold issue to address because if Continental was not bound as a party under Rules 213 and 214, it was not bound to the response or objection requirements of those rules. Having concluded that Continental—as intervenor under the Act—was not a party to the litigation and was not subject to the discovery requirements of Rules 213 and 214, we need not address the remaining arguments pertaining to objections beyond the nonparty objection.

¶ 62                                   II. Discovery Deposition Subpoena

¶ 63     The final issue on appeal is whether the circuit court erred by holding Continental in contempt of court and imposing a penalty for noncompliance with its order to produce the information requested in the plaintiffs' discovery deposition subpoena. Again, "where the trial court's discovery order is invalid, a contempt judgment for failure to comply with the discovery order must be reversed." *Bonneau*, 294 Ill. App. 3d at 723. "The trial court has broad discretion in ruling on discovery matters, and its orders concerning discovery will not be interfered with on appeal absent a manifest abuse of such discretion." *Mistler*, 111 Ill. App. 3d at 233.

¶ 64     Continental advances a twofold argument regarding this issue. First, Continental contends that the circuit court erred by holding it in contempt of court because the requested nonparty workers' compensation claim forms and injury reports were not relevant to any issue in the case. In the alternative, Continental argues that even if the requested information is relevant, the circuit court erred by holding it in contempt of court because the burden of collecting, reviewing, and producing the requested nonparty workers' compensation claim forms and injury reports outweighs any benefit that might be realized by their production.

¶ 65     Before proceeding with these arguments, we observe the plaintiffs' challenges regarding the timeliness of Continental's relevance and undue burden objections. The plaintiffs complain that Continental raised these objections only after the subpoena was issued and contend that they "should have been raised nearly a year earlier, to avoid undue delay." We disagree. As

stated in our review of the first issue, Continental's nonparty objection encompassed a threshold issue needing resolution before Continental would be required to raise any additional objections. Because we found that Continental did not become a party by intervening and was therefore not subject to the mandates of Rules 213 and 214, it was neither required to make any further objections under those rules nor was it bound by the timeliness requirements thereof. As noted, because Continental was a nonparty, the discovery deposition subpoena was the proper mode for the plaintiffs to request information from Continental. The subpoena was issued to Continental on September 26, 2019. Continental asserted its objections regarding relevance, burden, and privacy in its motion to quash subpoena, which was timely filed in the circuit court on October 18, 2019. For these reasons, we reject the plaintiffs' argument that Continental's objections were untimely.

¶ 66                                        A. *Relevance*

¶ 67        Having established that Continental was not a party for purposes of Rules 213 and 214, we note that "the rules also provide a party the means to discover relevant matter from third persons through the use of subpoenas." *Id.* at 231. "Discovery before trial presupposes a range of relevance and materiality which includes not only what is admissible at trial but also that which leads to what is admissible at trial." *Id.* at 232. "Thus, great latitude is allowed in the scope of discovery." *Id.*

¶ 68        However, "[i]n the context of civil discovery, reasonableness is a function of relevance." *Kunkel v. Walton*, 179 Ill. 2d 519, 538 (1997). "The supreme court rules governing civil discovery advance this principle by limiting discovery to information that is relevant to the issues in the lawsuit." *Carlson v. Jerousek*, 2016 IL App (2d) 151248, ¶ 37; see also *Manns v. Briell*, 349 Ill. App. 3d 358, 361 (2004) (threshold requirement of relevance to matters at issue must be met before circuit court may order discovery of information). "Although relevant (discoverable) information is defined broadly to encompass not only admissible information but also information calculated to lead to the discovery of admissible information [citation], this definition is not intended as an invitation to invent attenuated chains of possible relevancy." *Carlson*, 2016 IL App (2d) 151248, ¶ 37.

¶ 69        Moreover, "[t]he corollary to the relevance requirement is that the compelled disclosure of highly personal information 'having no bearing on the issues in the lawsuit' is an unconstitutional invasion of privacy." *Id.* (quoting *Kunkel*, 179 Ill. 2d at 539). "The constitutional right embodied in the privacy clause of the Illinois Constitution arose from the desire to safeguard against the collection and exploitation of intimate personal information." *Id.* ¶ 34; see also *Kunkel*, 179 Ill. 2d at 538-39 (broad sweep disclosing confidential information unrelated to litigation is unconstitutional and unreasonable); *People v. Lurie*, 39 Ill. 2d 331, 335 (1968) (unreasonably broad subpoena seeking irrelevant material is unconstitutional); *People v. Caballes*, 221 Ill. 2d 282, 330-31 (2006) (privacy clause intended to protect violation of personal privacy).

¶ 70        Here, Continental argues that the subpoena impermissibly sought discovery beyond what was relevant. Continental contends that although the plaintiffs did not request medical records, they sought information regarding injuries sustained by nonparty employees of Jack Cooper, which Continental alleges has no bearing on the issues in the lawsuit and is no less private than medical records.

¶ 71    The plaintiffs respond that the requested information is relevant because it pertains to allegations the plaintiffs made against AHC, the wholly owned subsidiary of Jack Cooper, which is insured by Continental. The plaintiffs indicate that AHC and Jack Cooper share the same officers and directors and the complaint in the underlying litigation alleges that AHC was negligent in light of what it knew or should have known about the dangers associated with the upper decks of Jack Cooper's trailers. The plaintiffs emphasize that they obtained information from other insurance carriers that proved that AHC had not produced all information on claims similar to Gregory's and the claim information from Continental was needed to determine whether AHC had other similar claims against it.

¶ 72    The plaintiffs further argue that the information Jack Cooper provided to Continental regarding injuries to its drivers arising from falls from the upper decks of its trailers is discoverable because it is relevant to the claim in the underlying lawsuit that the upper deck of the trailer was dangerous because AHC failed to install fall protection upgrades that Cottrell had made available to AHC. The plaintiffs add that the information is relevant to the claim in the underlying lawsuit that AHC had notice of the dangers associated with the upper decks yet failed to provide warnings to Gregory and failed to take steps to mitigate or eliminate the danger. We agree with the plaintiffs.

¶ 73    It is well established in Illinois that evidence of prior accidents is relevant to show notice and/or dangerousness of a condition, even if the prior accident is dissimilar to the present accident. See *Trimble v. Olympic Tavern, Inc.*, 239 Ill. App. 3d 393, 397 (1993) (proponent need not show similarity between accidents if the evidence of prior accident is offered to show defendant's notice of the hazardous nature of the accident site); *Turgeon v. Commonwealth Edison Co.*, 258 Ill. App. 3d 234, 239 (1994) (evidence of prior accidents admissible to show existence of danger or to show defendant's notice of hazardous nature of accident site); *Mikus v. Norfolk & Western Ry. Co.*, 312 Ill. App. 3d 11, 22-23 (2000) (same).

¶ 74    Here, we agree with the plaintiffs that the workers' compensation claim forms and reports of injuries completed by supervisors and/or drivers and injury reports filled out by drivers and/or supervisors for injuries as requested in the subpoena are relevant for the stated reasons, and we disagree with Continental's argument that the request exceeded the scope of relevance due to privacy concerns. The plaintiffs repeatedly emphasized that they were not requesting medical records. The circuit court observed the same in its order and specified that Continental need not produce any medical records or any other information redacted and identified in the privilege log. For these reasons, we find that the information the plaintiffs requested in the subpoena and ordered by the circuit court to be produced was relevant.

¶ 75                                    B. *Proportionality*

¶ 76    In the alternative, Continental argues that even if the information sought in the subpoena is relevant, the circuit court erred by holding Continental in contempt of court because the burden of collecting, reviewing, and producing the requested nonparty claim forms and injury reports outweighs any benefit that might be realized by their production. "Proportionality imposes a second limitation on what is discoverable: even if it is relevant, information need not be produced if the benefits of producing it do not outweigh the burdens." *Carlson*, 2016 IL App (2d) 151248, ¶ 39. " '[D]iscovery requests that are disproportionate in terms of burden or expense should be avoided.' " *Id.* ¶ 27 (quoting Ill. S. Ct. R. 201(a) (eff. July 1, 2014)).

¶ 77    Illinois Supreme Court Rule 201(c) (eff. July 1, 2014) "aims to prevent discovery abuse" and "contains several provisions for limiting discovery." *Carlson*, 2016 IL App (2d) 151248, ¶ 30. One such provision addresses proportionality as follows:

> "When making an order under this Section, the court may determine whether the likely burden or expense of the proposed discovery, including electronically stored information, outweighs the likely benefit, taking into account the amount in controversy, the resources of the parties, the importance of the issues in the litigation, and the importance of the requested discovery in resolving the issues." Ill. S. Ct. R. 201(c)(3) (eff. July 1, 2014).

¶ 78    "The protections of Rule 201(c) apply to discovery directed to parties and nonparties alike." *Carlson*, 2016 IL App (2d) 151248, ¶ 30. "The proportionality balancing test requires a court to consider both monetary and nonmonetary factors in determining" whether the anticipated burden of the proposed discovery outweighs the anticipated benefit. *Id.* ¶ 40. Moreover, in determining whether discovery is unduly burdensome, courts should consider additional factors such as "whether the discovery is sought from a nonparty without any direct stake in the outcome of the litigation." *Id.* ¶ 41.

¶ 79                              1. Workers' Compensation Claims

¶ 80    Here, the circuit court continued the hearing on the motion to quash subpoena so Continental could gather information regarding the burden of producing the requested information and report the same to the circuit court so the balancing test could be conducted. The record reflects that the supplemental affidavit of Jeffrey Silver was filed in the circuit court on December 5, 2019, and presented when the hearing reconvened on December 9, 2019. As noted, the supplemental affidavit provides information regarding the burden to produce the workers' compensation claim forms requested in paragraph 1 of the subpoena but does not directly reference any injury reports as requested in paragraphs 1 and 4 or the level of burden associated with their production. This was further exemplified by Continental's counsel's statement at the hearing that he was uncertain whether the injury records were stored on a computer.

¶ 81    The supplemental affidavit revealed that to produce copies of the workers' compensation claims requested in paragraph 1, it would be necessary to manually review approximately 3300 nonparty claim files to determine which ones involved falls from the upper decks, then redact the privileged information from each relevant file before submitting the information to the plaintiffs. The supplemental affidavit reflected a bottom-line figure exceeding $200,000 for Continental to compete this task. The plaintiffs asserted that they did not concede the accuracy of the affidavit, but they offered no evidence in rebuttal.

¶ 82    The sum exceeding $200,000 to produce the workers' compensation claims as requested in paragraph 1 of the subpoena is substantial and disproportionate to Continental's lien amount of $128,897.79.[3] See Ill. S. Ct. R. 201(a) (eff. July 1, 2014) (discovery requests that are disproportionate in burden or expense should be avoided). In determining the breadth of the burden, besides the monetary amount to produce the information, we also consider that

---

[3]This figure is reflected in an e-mail dated January 9, 2019, from Continental's counsel to the plaintiffs' counsel that is attached as an exhibit to the plaintiffs' January 29, 2019, motion to compel discovery and for sanctions.

Continental is not a party to the underlying litigation with no direct stake in the outcome. See *Carlson*, 2016 IL App (2d) 151248, ¶ 41.

¶ 83 Moreover, in examining any potential benefit to the production of the workers' compensation claims as requested in paragraph 1 of the subpoena, we reiterate that while discoverable information has a broad definition, "this definition is not intended as an invitation to invent attenuated chains of possible relevancy." *Id.* ¶ 37. The plaintiffs' counsel indicated that he obtained by court order information from other insurance carriers that proved defendant AHC had not produced all information on claims similar to Gregory's and the claim information from Continental was needed to determine whether AHC had other similar claims against it. Although we concluded that this requested information was relevant, we agree with Continental that the probative value of *possibly* discovering additional claims is minimal in comparison to the aforementioned burden for Continental to produce the information. As noted in *Carlson*, "[a] party may not 'dredge an ocean of *** information and records in an effort to capture a few elusive, perhaps non-existent, fish.' " *Id.* ¶ 65 (quoting *Tucker v. American International Group, Inc.*, 281 F.R.D. 85, 95 (D. Conn. 2012)).

¶ 84 Although *Carlson* involved electronically stored information and the supplemental affidavit in this case reflects that the workers' compensation claims are not stored electronically, the same logic applies in that the plaintiffs are not permitted to transmute their subpoena requests into a fishing expedition, especially in light of the unrebutted evidence of the burden associated with accommodating the request and considering Continental's nonparty status. See Ill. S. Ct. R. 201(a) (eff. July 1, 2014); *Carlson*, 2016 IL App (2d) 151248, ¶ 41. Because the evidence established that the burden of producing the workers' compensation claims as requested in paragraph 1 of the subpoena outweighs any benefit that may be realized from their production, we find the circuit court abused its discretion in ordering Continental to produce them.

¶ 85                                2. Injury Reports

¶ 86 Besides the workers' compensation claims requested in paragraph 1 of the subpoena, as noted, the supplemental affidavit mentions "reviewing and culling information identifying the nature of the underlying accident that resulted in the filing of the listed workers' compensation claims" but makes no direct reference to the burden associated with producing the injury reports requested in paragraphs 1 and 4. Notwithstanding the lack of evidence regarding the injury reports, the plaintiffs' counsel alleged at the hearing that the burden to produce the injury record data was minimal, as it could be generated by a "simple keystroke on a computer." Although Continental asserts on appeal that it would be an undue burden to produce the injury reports and contends that the "uncontradicted evidence before the trial court is that the records are not electronically stored or searchable through a computer system," Continental's counsel indicated at the hearing on the motion to quash subpoena that he was uncertain whether the injury records were stored on a computer. Clearly counsel was not talking about the workers' compensation claims themselves, as the subpoena reflects that those were not electronically stored. The statement by Continental's counsel demonstrates that questions remained regarding the burden associated with producing the injury reports requested in paragraphs 1 and 4.

¶ 87 We observe that the plaintiffs' counsel offered to travel to the injury record location to sort through the records himself or to pay the cost to ship the records so he could review them with

no burden on Continental. However, this contradicts counsel's own statement that the burden to produce the injury record data was minimal as such could be generated by a "simple keystroke on a computer." If that were true, there would be no justification for counsel to take it upon himself to review the records, as there would be no burden for Continental to produce the information at the deposition. However, as noted, no evidence was offered either way regarding the burden for Continental to produce the injury reports.

¶ 88 The circuit court was bound to conduct the balancing test required by the proportionality rule before ordering Continental to produce the injury reports as requested in paragraphs 1 and 4 (see Ill. S. Ct. R. 201(c)(3) (eff. July 1, 2014); *Carlson*, 2016 IL App (2d) 151248, ¶ 69), but it failed to do so. To reiterate, at the hearing, the plaintiffs' counsel claimed that there would be no burden for Continental to produce the information because it was computerized, and Continental's counsel responded that he was uncertain if the injury records were accessible on a computer. Notwithstanding this uncertainty, the circuit court ordered Continental to produce the injury reports without first gathering evidence and conducting a balancing test to determine the associated burden. This was an abuse of discretion. See *Carlson*, 2016 IL App (2d) 151248, ¶ 69 (failure to apply balancing test required by proportionality rule is error of law and abuse of discretion).

¶ 89 Having concluded that the circuit court abused its discretion by ordering Continental to produce the workers' compensation claims requested in paragraph 1 of the subpoena because the evidence established the burden to produce them was disproportionate to the benefit anticipated by their production and abused its discretion by ordering Continental to produce the injury reports requested in paragraphs 1 and 4 of the subpoena without first conducting the balancing test as required by the proportionality rule, we reverse the December 17, 2019, order holding Continental in contempt of court for refusing to comply with the orders to produce the same. We remand for further proceedings to allow the circuit court to reconsider its ruling under the correct standard required by the proportionality rule regarding the injury reports requested in paragraphs 1 and 4. See *id.* ¶ 70.

¶ 90 C. *Final Considerations*

¶ 91 On a final note, we observe the plaintiffs' challenge of the accuracy of Silver's supplemental affidavit regarding the cost to produce the requested information. They allege that the projected expense is inaccurate because Continental has already expended the effort to produce the information. We disagree. Silver's first affidavit dated October 15, 2019, and attached as Exhibit 2 to Continental's motion to quash subpoena indicates that Continental would need until November 15, 2019, in which to identify, redact, and log all information that it considered to be privileged or otherwise nondiscoverable. This was not accomplished, as the plaintiffs asserted in their response to the motion to quash that, to date, Continental had neither supplied a log nor produced any records, notwithstanding the self-imposed deadline of November 15, 2019. Hence, contrary to the plaintiffs' claim, the labor had not been expended as of that date.

¶ 92 The plaintiffs nonetheless allege on appeal that "Continental has repeatedly suggested to the trial court that it has already done the work." To that regard, the plaintiffs allege in their brief that Continental represented in its response to the plaintiffs' April 26, 2019, motion for sanctions that "it *had* produced records referring to other similar injuries." (Emphasis in original.) This claim is inaccurate, as the record shows that Continental actually indicated in

its response to the motion for sanctions that it had compiled—not records referring to other similar injuries as alleged by the plaintiffs—but "a claim listing of all claims involving Jack Cooper" and explained that "[t]he gathering of this information was labor intensive and necessarily took time as it required a manual review of each of [Jack Cooper's] hundreds of claim files." Likewise, at the hearing on the motion for sanctions, Continental's counsel stated that they compiled a list of all claims involving Jack Cooper "to try and accommodate counsel" and elaborated that "[i]t was an onerous undertaking. It was a manual undertaking going through hundreds of claims files, but we put it together for him." Based on these statements, the plaintiffs insinuate on appeal that Continental already expended the energy to produce what was requested. We disagree.

¶ 93    At the hearing on the motion for sanctions, the plaintiffs' counsel complained that what Continental actually produced was a list of workers' compensation claims containing over 3000 injury claims of nonparty employees of Jack Cooper. The plaintiffs' counsel further protested that Continental made no attempt to produce what was requested by sorting through the injury claims to determine which ones involved injuries similar to Gregory's—falls from the upper decks of the Jack Cooper vehicle transportation rigs. Counsel further objected that what Continental produced was "not even close to being acceptable." Moreover, had Continental already produced what the plaintiffs requested as of the date of the hearing on the motion for sanctions, there would have been no need for the plaintiffs to have subsequently requested the information via subpoena.

¶ 94    Besides their protests at the hearing on their motion for sanctions, the plaintiffs emphasized in their briefing of the first issue on appeal that when Continental provided a list of all claims made by the employees of Jack Cooper, "that is not what Plaintiffs requested." The plaintiffs indicated in their brief that they "requested copies of any claims or reports of injuries 'wherein a party alleged injuries sustained from a fall from a trailer upper deck' " and that "Continental's response, to furnish a list of all claims, without any indication whether those claims pertained to falls from the upper deck or ladder, did not provide what was sought in the request."

¶ 95    The plaintiffs may not have it both ways. They may not complain on one hand in their briefing of the first issue that Continental did not produce what they requested, then suggest in their briefing of the second issue that the effort Continental expended to produce that wrong information somehow alleviates the burden associated with producing the information that they actually requested. As established, Silver's supplemental affidavit sets forth the burden to produce the information requested in paragraph 1 of the subpoena. We concluded that burden was substantial and disproportionate to any benefit that may be realized from the production of the information. For these reasons, we reject the plaintiffs' arguments that Continental "has already done the work."

¶ 96                                            CONCLUSION

¶ 97    For the foregoing reasons, we reverse the June 20, 2019, contempt order and reverse the March 11, 2019, and May 14, 2019, discovery orders upon which the contempt order was based; we reverse the portions of the December 17, 2019, order that denied Continental's motion to quash and required Continental to produce the workers' compensation claim forms and reports of injuries completed by supervisors and/or drivers and injury reports completed by drivers and/or supervisors for injuries as requested in paragraphs 1 and 4 of the subpoena; we reverse the portion of the December 17, 2019, order holding Continental in contempt of

- 19 -

court for failing to produce the discovery ordered in the denied portions of the motion to quash; we affirm the portions of the December 17, 2019, order granting Continental's motion to quash; and we remand for further proceedings to allow the circuit court to apply the correct legal standard, utilizing the balancing test required by the proportionality rule with regard to the injury reports requested in paragraphs 1 and 4 of the subpoena.

¶ 98      Affirmed in part and reversed in part; cause remanded.